# Fearn *v.* Ward, adm'r.

*Creditor's Bill in Equity to subject Proceeds of Policy of Life Insurance by Deceased Debtor.*

1. *Insurance on life of husband, for benefit of wife; object and purpose of statute, and limitation as to amount.*—The statute authorizing the wife to procure or effect an insurance on the life of her husband (Code, §§ 2733–34), was intended "to authorize an insurance on the life of a husband and father, for the benefit of his surviving wife and children, freed from the claims of his creditors;" and the limitation upon the amount of annual premiums which the husband may pay, $500, was intended to guard against the perversion of the statute to the injury of creditors.

2. *Same; statute construed as exemption law; insolvency of husband.*—The statute is in the nature of an exemption law, and must receive a liberal construction: the solvency or insolvency of the husband, when the premiums are paid, does not affect the validity of the policy; but a policy in favor of one only of several children is not within the letter or spirit of the statute.

3. *Voluntary conveyance; who may impeach.*—Under the statute of frauds (Code, § 2124), as judicially construed, a voluntary conveyance is void as against existing creditors; and a person whose liability is contingent, or accrued on a contract which was in existence when the conveyance was made, is held to be within the protection of the statute.

4. *Insurance on life of husband, for benefit of wife; validity against debts existing when statute was enacted.*—As against debts or liabilities existing on the 15th February, 1867, when the statute authorizing such insurance was passed, it would operate as a retroactive exemption law, and a policy conforming to its terms would be subject to the claims of such creditors.

APPEAL from the Chancery Court of Marshall.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 7th February, 1878, by F. P. Ward, as the administrator *de bonis non*, with the will annexed of Thomas Fearn, deceased, against the ad-

ministrator of the estate of Robert Fearn, deceased, together with his widow (Eliza Lee Fearn), his infant daughter (Kate Coles Fearn), and James I. Donegan. Its object and purpose was to reach and subject to the satisfaction of a judgment, which the complainant, as administrator of said Thomas Fearn, had paid, and on which said Thomas Fearn was liable only as the surety of said Robert Fearn, certain moneys in the hands of Donegan, which had been realized on a policy of insurance on the life of said Robert Fearn, and loaned to said Donegan, on mortgage, by the guardian of said Kate Coles Fearn, the sole beneficiary of the policy. The judgment paid by the complainant was rendered by the Circuit Court of Madison, on the 27th April, 1871, in favor of the personal representative of F. J. Levert, deceased, in a suit commenced in the year 1867; which suit was founded on a bond, or promissory note under seal, for $1,150, dated 29th July, 1857, and payable twelve months after date, and signed by said Robert Fearn and Thomas Fearn as joint obligors. The bill alleged, that Thomas Fearn signed said bond only as the surety of Robert Fearn; that the complainant paid the judgment in full, under execution, on the 19th February, 1872, and took an assignment of it to himself, as administrator, from the attorneys of record of the plaintiff therein; that the estate of Robert Fearn was declared insolvent on the 18th October, 1876; and that the complainant had filed said judgment, as a claim against said insolvent estate, on the 30th January, 1877. It was further alleged, that the policy in favor of Kate Coles Fearn was received by said Robert Fearn, on the 18th July, 1870, in consideration of his surrendering a former policy, which he had effected on his own life on the 7th August, 1869, in favor of his wife and children, in the Piedmont Real Estate Insurance Company; that he "paid in annual premiums, out of his own means, on said first named policy, the sum of $204.68, and on said last-named (or substituted) policy the sum of $624.17;" that "at the time of effecting said insurance and taking out said policies, as aforesaid, and at the time of his death in March, 1873, said Robert Fearn was largely indebted, and was insolvent, and he effected said insurance, and took out said policies, and paid the annual premiums thereon, with the intent to hinder, delay, and defraud his creditors, and without any valuable consideration therefor, but as a voluntary gift to his said infant daughter;" and that there was no property or assets, out of which the complainant could make the amount of money due him on said judgment so paid, except the moneys realized on the said policy of insurance, and loaned by the guardian of said Kate Coles Fearn to said

Donegan. The prayer of the bill was, "that an account may be taken of what is due to complainant on his said claim against the estate of Robert Fearn, and its payment decreed out of said insurance money, and the property mortgaged by said Donegan be subjected to its payment; and for such other and further relief as the nature of his case may require."

A demurrer to the bill was interposed by the widow, both individually and as guardian for Kate Coles Fearn, assigning the following causes of demurrer : 1. That the complainant does not show by his bill any such case as entitles him to a discovery, or any other relief. 2. "That it does not appear by the averments of the bill that said Robert Fearn paid annually, out of his own funds or property, premiums above the amount of $500, for said insurance." 3. "Said bill shows that Robert Fearn paid annually premiums on said insurance of an amount less than $500, and that said insurance was for the benefit of his family, within the purview and meaning of the statute law of Alabama; and that therefore the amount collected on the said policy is not liable to the payment of the debts of the said Robert Fearn." The chancellor overruled the demurrer, but without any written opinion, so far as the record shows; and his decree, from which this appeal is prosecuted under the statute (Code, § 3918), is now assigned as error.

HUMES & GORDON, for appellant.—The theory of the bill is, that the creditors of the husband can intervene and claim the insurance money, when the aggregate of all the annual premiums paid exceeds $500. But this is not the proper construction or meaning of the statute. It expressly says, on the contrary, that the creditors can assert no claim, unless the husband has "paid annually"—that is, each year —premiums amounting to more than $500. The averments of the bill show that $204.68 was paid prior to July 18, 1870, leaving a balance of $624.17 to be distributed through the period intervening between that day and the husband's death in 1873 ; thus negativing, by necessary inference, the idea of any annual payment exceeding $500. Any other construction of the statute would frustrate its manifest purpose, and prevent any benefit accruing to the debtor's family unless he died soon after effecting the insurance on his life ; since it is matter of easy calculation, that an insurance at very low figures annually would soon exceed $500. In favor of this construction, see *Stone v. Knickerbocker Insurance Co.*, 52 Ala. 592; *Continental Insurance Co. v. Webb*, 54 Ala. 688; *Gould v. Emerson*, 99 Mass. 154; *Smith v. Missouri Life*

*Insurance Co.*, 4 Dillon, 453 ; *Con. Mutual Insurance Co. v. Burroughs*, 34 Conn. 63 ; *Same v. Palmer*, 42 Conn. 60 ; *Hutson v. Menifield*, 51 Indiana, 34; *Cragin v. Cragin*, 66 Maine, 517. The exemption being for the benefit of the debtor's family, creditors have no right to complain because one child reaped the entire fruits of the policy. If any one · can complain of this, it would seem that only the other members of the family could have that right, since they alone are injured.

CABANISS & WARD, *contra.*—But for the statute (Code, § 2733), the whole of the insurance money would have been subject to the claims of creditors.—*Stone v. Knickerbocker Life Insurance Co.*, 52 Ala. 592. The statute allows a debtor to invest, in insurance on his life, for the benefit of his family, not $500 each year, but $500 during his life. Another statute had then exempted $500 in land, and this statute was intended to exempt the same amount for insurance as an investment. There would have been as much propriety in exempting that sum annually when invested in land, as when paid out (that is, invested) in insurance. By annual payments of $500, a debtor might, during a long life, accumulate a large estate for his family, while leaving his debts unpaid. But the statute does not authorize this. Its language is, "Such exemption shall only apply to such insurance, in the proportion of $500 to the amount of premiums paid for such insurance." If the policy here could be sustained under the statute, it would only exempt about $5,785, leaving $3,810 subject to the claims of creditors ; those amounts representing the ratio between $500 and the excess of premiums paid. But the policy is for the benefit of one of several children, and not for the wife or family. It does not come within the terms of the statute ; and if it can be sustained under the statute, similar policies might have been effected for each member of the family. Independent of the question of construction, the statute cannot be invoked in this case ; because the complainant's debt was contracted before its enactment, and the right of exemption is to be determined by the law of force when a debt is contracted. *Nelson v. McCrary*, 60 Ala. 301; *Watts v. Burnett*, 56 Ala. 340 ; *Blum v. Carter*, 63 Ala. 235.

SOMERVILLE, J.—This is a creditor's bill, filed by the appellee, for the purpose of subjecting to the payment of his claim the proceeds of a policy of insurance on the life of one Robert Fearn, the debtor, which was made payable to one of his children, Kate Coles Fearn, and was subsequently col-

lected, and invested in a mortgage security, after the death of the assured. The bill alleges the insolvency of the deceased at the time the insurance was effected, and also at the date of his death; and that he had a wife and several other children, besides the beneficiary of the policy.

In the year 1857, Thomas Fearn, of whose estate the appellee is the administrator *de bonis non*, with the will annexed, had become surety for Robert Fearn. Suit was brought on this claim, and the personal representative of the surety paid off the judgment, in February, 1872, which, with interest and costs, amounted to $2,276.16; and thereupon had the judgment assigned to him, as authorized by the statute. In August, 1869, Robert Fearn insured his life, for the sum of $10,000, in the Piedmont Real Estate Insurance Company, taking the policy payable at his death to his wife, Eliza Lee Fearn, and his children. In July, 1870, he surrendered this policy, and received another, in consideration, from the Piedmont and Arlington Life Insurance Company, for a like sum, payable to his infant daughter, Kate Coles Fearn. Robert Fearn paid annual premiums out of his own means, amounting to $204.68 on the first policy, and $624.17 on the second; being less than $500, for any one annual premium. After the death of the assured, the policy was collected, and the proceeds invested, by the guardian of the infant beneficiary, in a loan secured by mortgage on certain real estate described in the bill. These are substantially all the facts necessary to be stated for a clear comprehension of the points that are raised by the demurrer to the bill, which was overruled by the chancellor.

Section 2733 of the Code of 1876 authorizes any married woman to have her husband's life insured, for her sole use, free from the claims of the representatives of the husband, or any of his creditors; and in the event of her surviving her husband, the sum, or net amount of insurance, becomes payable to her. The following limitation, however, occurs in this section: "*Provided*, however, that in case the husband shall have paid, *annually, premiums above the amount of five hundred dollars* (out of his own funds or property), for such insurance, then such exemption shall only apply to such insurance in the proportion of five hundred dollars to the amount of premiums paid for such insurance."

Section 2734 of the Code further provides, that, "in case of the death of the wife, before the decease of her husband, the amount of the insurance may be made payable after death to her *children*, for their use, and to their guardian, if under age."

In *Stone v. Knickerbocker Life Insurance Co.* (52 Ala. 589),

it was said of this statute, *per* BRICKELL, C. J., that its object was to "authorize an insurance on the life of a husband and father, for the benefit of his surviving *wife and children*, freed from the claims of his creditors. To these he owes the duty of maintenance and protection. The statute intended to guard against the perversion of this right or privilege into the means of defrauding creditors. Therefore, a limit is fixed, beyond which he cannot pass, in paying premiums for such insurance from his own funds or property, which, in the absence of the statute, should have been appropriated to his creditors."

In *Continental Life Ins. Co. v. Webb, adm'r* (54 Ala. 688), it was said, that "a provision for the *family*, deprived by the death of the husband of its natural and legal protector, on whom the law devolved the duty of maintenance, was the object to be accomplished."

This statute confers a special privilege, and is in the nature of a law exempting property from liability to execution. In order to obtain the benefits intended to be secured by it, there must be a substantial compliance with its provisions. We construe it to authorize the payment of a premium or premiums, not exceeding five hundred dollars for each year, on one or more policies, taken out in accordance with its letter and spirit ; and this sum may be paid out of the funds or property of the husband, whether he be at the time solvent or insolvent.

And while, under the decisions of this court heretofore construing the exemption laws of this State, they have always received a liberal construction, they are not to be interpreted against obvious intention, or manifest justice. The policy, in this case, was procured by the husband in favor of *one* of his several children. The statute designed it for the benefit of the *wife* and *children*. It is not, therefore, in compliance with the requirements of the statute, and is not such a policy as justifies the invocation of the statute for its protection.

There is one aspect of this case, which, without reference to the other points considered, proves fatal to the defense interposed by the demurrer to the bill. The above statute, constituting sections 2733 and 2734 of the Code of 1876, was enacted and approved February 15, 1867.—Session Acts 1866-7, p. 503. The claim in question, though at that time contingent, accrued from a contract in existence as far back as the year 1857. A contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute ; and one whose claim accrued from a contract in existence at the time such conveyance is made, is

[Hatchett v. Berney.]

a *creditor* within the meaning of the statute of frauds.—*Bibb v. Freeman et al.*, 59 Ala. 612.

This statute, being one of exemption, furthermore, cannot operate on contracts existing before the date of its adoption. Parties entering into contracts are presumed to have in view such exemption laws as are in force at the date of the contract. And it has been held, both by this court and the Supreme Court of the United States, that the enlargement of property exemptions, by State legislatures, can not have a retrospective operation on antecedent contracts; for this would be in violation of section 10 of article I. of the constitution of the United States, which declares that "no State shall pass any law impairing the *obligation* of contracts."—*Nelson v. McCreary et al.*, 60 Ala. 301; *Gunn v. Barry*, 15 Wall. 610.

The chancellor did not err in overruling the demurrer, and his decree is affirmed.

BRICKELL, C. J., not sitting.