76 199<br>94 572

# Felrath *v.* Schonfield.

*Creditor's Bill in Equity, to set aside Fraudulent Conveyances by Deceased Debtor, and subject Proceeds of Policies of Life Insurance.*

1. *Life-insurance by husband, for benefit of wife.*—The statute allowing a married woman to insure the life of her husband for her benefit, free from the claims of his creditors, provided that not more than $500 shall be paid out of the husband's funds in annual premiums (Code, § 2733), is in the nature of an exemption law, and is to be liberally construed to effect its purpose and policy; and whether the insurance is taken out by the wife herself, with moneys furnished by the husband, or by the husband himself without the agency or knowledge of the wife, it is within the protection of the statute, and can not be reached by his creditors, unless the annual premiums paid exceed $500.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 8th December, 1883, by Joseph Felrath, as a creditor of Siegmund Vogel, deceased, against Mrs. Henrietta Vogel, his widow, Mrs. Caroline Schonfield (who was the mother of Mrs. Vogel), Henry Bernstein (who was the brother of Mrs. Schonfield), the Mobile Life Insurance Company, and several other corporations in the nature of insurance associations. Its object and purpose was, to set aside two conveyances of property, which had been executed by said S. Vogel to Mrs. Schonfield and said Bernstein, on the ground that they were given and accepted with the intention, on the part of both the grantor and the grantees, to hinder, delay and defraud the complainant and other creditors in the collection of their debts, and to subject the property to the satisfaction of said debts; and, also, to reach and subject, in the hands of the several defendant insurance companies, the amounts due on policies of insurance, which the said Vogel

had effected on his own life, for the benefit of his wife, on the ground that they were fraudulent, in fact and in law, as against his creditors.

The complainant's debt was evidenced by three promissory notes, which were given for borrowed money, dated September 26th, October 15th, and November 5th, 1883, respectively, and aggregating $4,300; which notes purported to be indorsed by said Bernstein and Mrs. Schonfield, but, as the bill alleged, they denied their liability, and insisted that their indorsements were forged. The bill alleged, also, that at the time these notes were given, and for a series of years before, said Vogel was hopelessly insolvent, but was apparently engaged in carrying on a prosperous business as a merchant in Mobile, obtaining money and goods, from time to time, with the connivance and assistance of said Bernstein and Mrs. Schonfield, by repeated forgeries and false pretenses; that he died by suicide, in December, 1883, leaving a last will and testament, of which his widow was appointed the executrix, but which had not been admitted to probate when the bill was filed; and that his estate was hopelessly insolvent.

As the case is here presented, it is only necessary to state the allegations of the bill as to the policies of insurance, which were in these words: "Your orator further showeth, that said S. Vogel was largely in debt in April and May, 1874, and has continued in debt ever since; that with the actual intent of hindering, delaying and defrauding his creditors out of the means that he had, and intending to leave his wife rich in the event of his death, and to leave his creditors without any means whatever from which to collect their debts, he insured his life, in large sums, for the benefit of his wife, said Henrietta Vogel; that in this way, and with this intent, on the 29th May, 1874, he took out a policy on his own life, for $5,000, in the Mobile Life Insurance Company, and paid thereon an annual premium of $168.50, until May 29th, 1880, when he surrendered said policy, and took a paid-up policy in said company for the sum of $3,000, payable to his said wife. In the same way, and with the same intent and purpose, said S. Vogel obtained a policy of insurance on his life, for $5,000, in the Manhattan Life Insurance Company, and paid thereon large sums for a long time as annual premiums, but what exact amount your orator is not informed, and can not state; and said policy was likewise converted into a paid-up policy for the benefit of the said Henrietta Vogel, but your orator is not informed as to the amount or date of said paid-up policy. With a like purpose and intent, said S. Vogel joined and became a member of several incorporate orders, in which a mutual insurance of the lives of the members is maintained, and in which each

[Felrath v. Schonfield.]

member is assessed to pay the insurance upon the lives of each of the members who dies during his membership; and said Vogel, as a member of said several orders, paid out large sums, as dues and assessments, the exact amount of which is unknown to your orator. The said orders are the following: The *Knights of Honor*, in which the insurance due on his life is $2,000; the *Knights of Pythias*, in which the insurance due is supposed to be $2,000; the *American Legion of Honor*, in which the insurance is supposed to $3,000; the *Knights of Honor Mutual Aid Association*, in which the insurance due is supposed to be $5,000; and the *Independent Order of B'nai Brith*, in which the insurance due is supposed to be $2,000. All of said insurance was made payable to said Henrietta Vogel, the wife of said S. Vogel, though the premiums, dues, &c., were paid by said S. Vogel out of his own means, and while he was entirely insolvent, and with the intent to hinder, delay and defraud your orator and his other creditors. And your orator shows that, while said S. Vogel probably committed suicide, and several of said corporations ought not to be liable for the amount his life was insured for, the fact that he did commit suicide can never be sufficiently proved to enable said companies to defend against the same; and if said money is not condemned to the payment of your orator's debt, it will have to be paid to the said fraudulent grantees as aforesaid." The prayer of the bill, as to the policies of insurance, was, "that the said several sums, due as insurance upon the life of said S. Vogel, by the respective corporations made defendants hereto, may be condemned, and ordered to be paid to your orator on his said debt;" and for other and further relief, under the general prayer.

A demurrer to the bill was filed by Mrs. Henrietta Vogel, in which the following (with other) grounds of demurrer were specially assigned: (5.) "Because said bill does not show or charge that this respondent, by herself, or by any third person, caused said insurance, or any of it, to be issued on the life of her said husband, or that he ever paid over $500 as premiums thereon." (6.) "Because said bill does not allege that more than $500 had been paid out annually by said S. Vogel, as premiums on policies of insurance issued on his life for the benefit of his said wife, this respondent." The chancellor overruled the demurrer, on all the grounds specifically assigned; but, afterwards, on motion of "the several defendant insurance companies," dismissed the bill as against them. From this decree the complainant now appeals, and here assigns as error the dismissal of his bill as against the several insurance companies; and by consent indorsed on the transcript, there is a cross-assignment of errors in the name of "Caroline Schonfield

[Felrath v. Schonfield.]

*et al.*," based on the decree overruling the demurrer to the bill on the 5th and 6th grounds specifically assigned by Mrs. Vogel.

J. L. & G. L. Smith, for appellant. (No briefs on file.)

R. H. Clarke, and Overall & Bestor, *contra*.

SOMERVILLE, J.—The bill is filed by the appellant, Felrath, as a creditor of one Vogel, to reach the proceeds of certain policies of insurance taken out by him on his own life, and payable to his wife as beneficiary. The theory of the suit is, that the investment by the deceased husband was a fraud on the appellant and other creditors.

The main inquiry, upon which the case depends, is, as to whether these policies can be properly construed to come within the influence of section 2733 of the present Code. This section declares, that " any married woman, by herself and in her name, or in the name of any third person with his assent as her trustee, may cause to be insured, for her sole use, the life of her husband ; " and that the proceeds of the policy, or policies, shall be payable to her, if she survives him, to her own use, free from the claims of creditors of the husband. The amount of premiums allowed to be invested in this manner, however, from the moneys of the husband, is not permitted to exceed the sum of five hundred dollars annually.

The facts, as admitted, show that the policies were obtained at the instance of the husband, and that the wife had no agency in procuring them ; and it is insisted that, for this reason, they do not come within the statute. This construction of the statute is, in our opinion, entirely too narrow and rigid. The policy of such legislation finds its origin in the duty of maintenance and protection which every husband owes to his family, and the importance to the State that as few widows and orphans as possible should be cast as paupers upon the public charity. *Continental Life Ins. Co. v. Webb*, 54 Ala. 688 ; *Stone v. Knickerbocker Life Ins. Co.*, 52 Ala. 589. In *Fearn v. Ward*, 65 Ala. 33, we said, that this statute was " in the nature of a law exempting property from liability to execution." It has been uniformly held in this State, that exemption laws are to be liberally construed ; and the application of this principle forbids the strict construction contended for by the counsel of the appellant. A similar statute prevails in the State of Illinois and Missouri, each, like our own, being copied substantially from the New York statute of 1840. So far as affects the question before us, the phraseology of these various laws seems to be essentially the same. The courts of these States have held, that the statute is remedial in its character ; that it is founded on

[Felrath v. Schonfield.]

charity, and intended to subserve a beneficent purpose ; and that it is in the nature of, though not strictly, an exemption law ; and, for these several reasons, that it should be liberally construed to effect the legislative policy contemplated in its passage.—*Cole v. Marple*, 98 Ill. 58 ; *Charter Oak Life Ins. Co. v. Brant*, 47 Mo. 419 ; *Brummer v. Cohn*, 86 N. Y. 11.

We do not think it was ever contemplated that a policy of insurance should have been taken out by the wife exclusively, or through her agency, in order to receive the protection of the statute. Under the rules of the common law, the wife was disabled to make, or cause to be made, a contract of this nature ; and even to any contract made by a third person, for the benefit of the wife, the assent of the husband was required.—1 Pars. Contr. (6th Ed.) 369. The statute must be construed, therefore, to be enabling in its purposes, designed to remove from the wife the shackles of coverture imposed by the common law, which served to paralyze her independent authority to contract—so far, at least, as this particular subject-matter is concerned. When the husband undertakes to procure for her a policy of insurance on his own life, in accordance with its provisions, he acts for her, as her self-constituted agent ; and in as much as he is conferring a benefit upon her, in the nature of a gift, her acceptance of it will be presumed, especially in view of her subsequent assertion of claim to it. The creditors of the husband are no more injured where the husband acts for the wife, than where the wife acts for herself. The injury, if any, lies in the appropriation of the husband's money to the use of the family. It would be a narrow view of the law to say, that it authorizes the husband to hand over money for premiums to the wife, and that she could lawfully take out the policy, but that, if he should take the same money, and procure the issue of the policy for her use, and in her name, it would be vitiated by reason of her ignorance of, or want of agency in the negotiation. There can be no more fraud against creditors in the one case than in the other.

The policies, in our judgment, are within the equity and spirit of the statute, if not strictly within its letter, and were issued in substantial compliance with the provisions of the statute. Beneficial statutes, especially when enabling or remedial in their nature, have always been expounded by what is called an equitable construction—so as to be either enlarged or restrained in their letter *ultra* the strict letter, but not, as well said, *contra* the letter.—Potter's Dwar. Stat. 236, 237.

In construing this statute in *Fearn v. Ward, supra*, it was not necessary for the purposes of that case that we should go to this extent.

Unless the husband is shown to have invested more than the

[Guilmartin v. Wood.]

sum of five hundred dollars annually in premiums on the policies, no part of the proceeds could be reached by creditors. *Fearn v. Ward*, 65 Ala. 33; Code, 1876, § 2733. This fact the bill fails to allege, and the chancellor erred in not sustaining the demurrer based on this ground. The cause must be reversed, for this reason, and remanded on the cross-appeal taken by Caroline Schonfield and others. The decree dismissing the bill for want of equity, however, as to the several defendant insurance companies on the main appeal taken by the complainant, Felrath, is without error.

Reversed and remanded.