# Mobile & Montgomery Railway Co. *v.* Gilmer.

*Action for Breach of Covenant.*

1. *Covenants running with land.*—A covenant by a railroad company, in consideration of the right of way through plaintiff's land, to erect a flag-station at a point convenient to his house, for the receipt and discharge of passengers and freight, and to permit him to cultivate all of

[Mobile & Montgomery Railway Co. v. Gilmer.]

the land embraced in the grant which was not needed for use by the railroad company, runs with the land, and is binding on an assignee with notice.

2. *Sufficiency of complaint; negative averments.*—In an action for the breach of such covenants, it is not necessary that the complaint should aver that the stopping of trains, as proposed, would not interfere with the running of the railroad's regular schedule, or that his cultivation of the land would not interfere with the wants and requirements of the railroad; these facts, if they exist, being matters of defense, and resting more properly in the knowledge of the railroad officials than of the plaintiff.

3. *Sworn plea denying execution of written instrument sued on.*—In an action on a written instrument which purports to be "signed by the defendant, his partner, agent, or attorney in fact," the instrument is admissible as evidence without preliminary proof of its execution, unless its execution is denied by plea verified by affidavit (Code, § 2770); and the statute being liberally construed, it applies to a written instrument which, though not signed by the defendant, is shown by the averments of the complaint to be binding on him as the assignee or successor in law of the person who signed it.

4. *Plea of general denial; when must be sworn to.*—In an action for a breach of covenants, a plea which "denies all and every allegation of the complaint," includes a denial of the execution of the written instrument sued on, and is demurrable unless supported by affidavit.

5. *Limitation of action on instrument under seal.*—By statutory provision (Code, § 2614), an action on a written instrument under seal is not barred by the lapse of any period less than ten years.

6. *Writings construed together, when executed at same time, and relating to same subject-matter; deed signed by president, as act of railroad company.*—A deed conveying to a railroad company the right of way through the lands of the grantor, and a written instrument executed in the name of the company by its president, containing covenants running with the land in favor of the grantor, being executed contemporaneously, and relating to the same subject-matter, will be construed together as one instrument; the acceptance of the deed by the company charges it with notice of the covenants, and estops it, while holding possession of the land, from denying the authority of its president to execute the instrument.

7. *Covenantee as creditor of covenantor.*—The covenantee in such written instrument is a creditor of the covenantor (railroad company), not from a breach of the covenants, but from the date of the instrument.

8. *Consolidation of railroad companies, with reservation of rights and remedies of creditors; subsequent corporation organized by bondholders, as purchaser or assignee.*—The act authorizing and ratifying the consolidation of the Alabama & Florida with the Mobile & Great Northern Railroad Company, under the name of the Mobile & Montgomery Railroad Company, expressly declared that such consolidation "shall in no way affect the rights of the creditors of said companies, and their separate existence shall be continued as to all the rights and remedies of creditors," including both secured and unsecured creditors; and the purchasers of the indorsed bonds issued by the consolidated company, who were afterwards incorporated under the name of the Mobile & Montgomery Rail*way* Company, the defendant in the present suit, are chargeable with notice of the rights of creditors thus reserved, and are bound by covenants running with the land acquired from either of the original companies.

9. *Measure of damages.*—The measure of the plaintiff's damages, for the breach of such covenants, is the difference between the present value of his lands, and their increased value if the covenants had been

fully performed; that is, the additional value which would have accrued to the lands from such performance.

10.   *Same; total and partial breaches*.—The plaintiff may, at his election, declare for a total breach, and claim in one action the damages running through many years.

11.   *Evidence rebutting adverse possession*.—The correspondence and other transactions between plaintiff and the original railroad company (covenantor), prior to the execution of the deed and covenants signed by them respectively, are competent evidence for the plaintiff, suing for a breach of covenant, as tending to prove permissive occupation by the railroad company, and to rebut the idea of adverse possession.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. SAM. H. SPROTT.

This action was brought by George N. Gilmer, against the Mobile & Montgomery Railway Company, as the assignee and successor of the Alabama & Florida Railroad Company, to recover damages for alleged breaches of covenants; and was commenced on the 30th March, 1885. The covenants were contained in a written instrument, which was set out in the complaint, in these words:

"State of Alabama,  }
Montgomery County. }    Know all men by these presents, that in consideration of Geo. N. Gilmer, of Lowndes county, Ala., having sold and conveyed to the Alabama & Florida Railroad Company of Alabama, for the sum of one dollar, the right of way and the land for fifty feet on each side of the centre line of said railroad extending through his plantation, and certain other privileges mentioned in the deed of conveyance given by said Gilmer; the Alabama & Florida Railroad Company of Alabama will stop the passenger and freight trains (when proper signals are given) at some convenient point opposite the house of said Gilmer, and receive and discharge (without extra charge) passengers and the sacked and baled produce of the farm, or any other freight or produce of said farm, when the receiving and delivery of said other freight and produce can be done without seriously interfering with the running of schedule. The further privilege is given said Gilmer to cultivate such parts of said right of way not used by said railroad company, so long as the same may not interfere with the wants and requirements of said railroad company; and further, if at any time the said railroad company should erect a depot on said right of way, the sale of ardent spirits will be strictly prohibited. Given under my hand and the seal of the company, this 7th day of March, 1868."   "CHARLES T. POLLARD, president."

"In presence of G. Jordan."

The complaint alleged that this instrument, and Gilmer's deed conveying the right of way, therein referred to, "were contemporaneous agreements, and are in law one instrument;" that Pollard was at that time the president of said railroad company, and as such president negotiated for said deed and made said covenant with Gilmer; that the covenants run with the land, and are binding on the defendant, "a corporation chartered under the laws of Alabama, who is the successor in title of the said Alabama & Florida Railroad Company of Alabama, to the right of way and lands mentioned and described in said agreement or covenant above stated, and took said lands and right of way with full knowledge of the obligations growing out of said agreement, and holds said lands and right of way only under said deed." The original complaint alleged as a breach, "that at many and divers times since the 13th March, 1868, and up to and including every and each year to the present time, the said defendant has been guilty of willful breaches of said covenants, in this: that it has refused to stop its passenger and freight trains, though the proper signals for so stopping were given, at a convenient point opposite the house which, at the time of the making of said covenant, was the house of said Gilmer, and which is now the house of plaintiff, though such point for stoppage was agreed upon and recognized by plaintiff and defendant as a convenient point for such stoppage; and in consequence of said failures by the defendant to comply with its duty in the premises, plaintiff has been greatly damaged," &c. "Plaintiff further avers, that the defendant was often requested to do its duty in the premises, by stopping its passenger and freight trains as aforesaid, but has persistently refused, and still refuses to do so. And plaintiff further avers, that he has been hindered and denied the right to cultivate any portion of said right of way granted as aforesaid, by the defendant, as it has persistently kept the same in such condition, though in no way required by and for the proper use of said right of way by defendant, as to amount to a virtual denial to plaintiff of the right of such cultivation; the said right of way and lands being put by defendant, against plaintiff's protest, in such a state as to be wholly impossible of cultivation."

An amendment of the complaint alleged, as a further breach, "that during each and every year since the year of 1874, when said Mobile & Montgomery Railway Company became the owner and purchaser of said line of railway, said

defendant has failed and refused to comply with said covenants, in this: that it has failed and refused to stop any of its trains running on its said line of railway, though the proper signals therefor were always given. And plaintiff avers that, on each and every day, and on the passing of each and every train on said line of railway, since said last-named year, there have been passengers awaiting said railway trains for transportation, and freight and other produce of said farm awaiting transportation from said farm, on the passenger or freight trains thereof; but the said defendant has wholly failed and refused to stop its said trains for the transportation of said freight and passengers."

The defendant demurred to the complaint, and to each breach assigned, specially assigning the following (with other) grounds of demurrer: 1st, that the facts alleged do not show that the covenants run with the land; 2d, that no cause of action is shown against the defendant; 3d, that the facts stated do not show that the defendant is bound to perform the covenants contained in the written instrument set out; 4th, that the breaches assigned are vague, indefinite, and uncertain; 5th, "that it is not alleged that the stopping of defendant's trains, at the times alleged, would not have interfered with the running of schedule;" 6th, that it is not averred that the said parts of the right of way were not used by defendant, nor that the cultivation of said right of way by the plaintiff would not have interfered with the wants and requirements of the defendant." The court overruled the demurrer, and the defendant then filed the following pleas: "(1.) Defendant denies all and every allegation of the complaint, with leave to give in evidence any matter of defense under this issue. (2.) Statute of limitations of one year. (3.) The statute of six years. (4.) The statute of limitations of ten years. (5.) Defendant denies each breach alleged in the complaint. (6.) The defendant pleads the general issue to the matters alleged in the complaint." The court sustained a demurrer to the 1st, 2d, and 3d pleas, and the cause was tried on issue joined on the others.

On the trial, as the bill of exceptions shows, the plaintiff offered in evidence the written instrument above set out, "without any evidence of its execution by said Pollard, or of his authority to make or execute such an agreement;" and the court admitted it, against the objection and exception of defendant. It is stated, also, that "there was no evidence showing that the corporate authorities of said Alabama &

[Mobile & Montgomery Railway Co. v. Gilmer.]

Florida Railroad Company ever passed any resolution authorizing said Pollard to make such contract." The court charged the jury, in this connection, "that it was not necessary, under the pleadings, that the plaintiff should prove the execution of said written instrument by Pollard, nor that he had any authority as president, by resolution of the board of directors, to enable him to make said contract." To each part of this charge the defendant excepted.

The plaintiff, testifying as a witness for himself, "stated that, shortly after the passage of the act incorporating the Alabama & Florida Railroad Company (February 11th, 1850), one J. D. Hopper, representing himself as the agent of said company to get subscriptions and right of way for said railroad, came to his plantation in Lowndes county, about fifteen miles from Montgomery, through which the line of said railroad was located, and represented that the company desired the right of way through the lands of witness, for about one mile and a quarter, and that the company, if he would give the right of way over his lands, would stop its passenger and freight trains at some convenient point opposite his dwelling-house, about two hundred yards from the line of said railroad, and, whenever proper signals were given, would put off and take on passengers and freight, packed or baled; that he (witness) agreed to these terms; that said Hopper agreed, also, that the railroad company should furnish him every facility for freight and passengers that the company could furnish, and the company was to have the right of way through his said lands, for railroad purposes, fifty feet on each side of the centre of the track." The defendant objected to the testimony of the witness, as to these declarations or statements made by Hopper, and duly excepted to their admission. The bill of exceptions further states: "There was no evidence that said Hopper had ever been appointed agent for said railroad company, other than what appears herein."

The plaintiff read in evidence the several acts of the General Assembly of Alabama incorporating the Alabama & Florida Railroad Company (February 11th, 1850), incorporating the Mobile & Great Northern Railroad Company (February 15th, 1856), authorizing and ratifying the consolidation of said two companies under the name of the Mobile & Montgomery Railroad Company (August 8th, 1868), and providing for the indorsement of railroad bonds in the name of the State (February 25th, 1870); and it

was agreed that these several acts might be referred to as if set out at length in the bill of exceptions. "It was agreed and admitted, also, that bonds to the amount of $2,500,000 were issued by said M. & M. Railroad Company, and indorsed in the name of the State, shortly after the passage of said act authorizing their issue and indorsement, to-wit, in 1870, and were put upon the market, and sold at not less than ninety cents on the dollar, which sum was paid in cash by the purchasers; that a mortgage was executed to secure the payment of said bonds, with interest, to Josiah Morris and others as trustees; that default was made, and proceedings thereupon had in the Chancery Court at Montgomery for the foreclosure of said mortgage, under which the road and all of its property was sold, as set forth in the case of *M. & M. Railway Co. v. Steiner, McGehee & Co.*, 61 Ala. 539 *et seq.*, the agreed facts in which case were admitted and read in evidence; and that the purchasers at said sale were organized into a corporate body, as set forth in said case, and now constitute the defendant in this case. It was admitted that said defendant had no notice of the said contract here sued on, before the sale and purchase of said bonds, other than what may be imputed to said bondholders, now the defendant in this case, from the facts herein set forth. There was no evidence that said written contract was ever recorded in any place, nor that any deed from Gilmer to said railroad company was ever recorded." The purchase by said bondholders was made in November, 1874, and was confirmed by the court at its November term, 1874; but the record does not show the date of the organization of the purchasers as a new corporation, under the name of the present defendant.

The plaintiff read in evidence the deposition of Chas. T. Pollard, who thus testified as to the execution of the written instrument on which the suit was founded: "The whole of said instrument is in the hand-writing of G. Jordan, except the date, which is mine, and except my signature. Mr. Jordan was then the superintendent of the road. I executed the instrument as president of the road, under the general power I had to arrange all right of way questions. I do not remember the particular circumstances of the execution, except that it was in pursuance of arrangements Mr. Jordan had already made; and I know nothing about the deed referred to." The plaintiff's evidence showed, also, that the railroad track was constructed through plain-

tiff's lands "as early as in 1857," and was completed to the State line between Alabama and Florida in 1861; "that a depot was established on the lands of Jno. T. Gilmer, which adjoined plaintiff's lands on the south, a warehouse was put up there, and a small store was carried on, in which plaintiff was interested as a partner; that this depot was not more than three quarters of a mile from plaintiff's dwelling-house, and about two hundred yards from his line; that said depot so remained until about 1869 or 1870, when it was moved about a half-mile further south, on the said Jno. T. Gilmer tract of land, which had then been bought by one Morgan; that when the railroad track was completed to a point on said land opposite to plaintiff's gin-house, which was about one hundred and fifty yards distant from the track, a switch was made, on which three or four cars could be placed; that this switch remained until about 1868; that plaintiff put up a platform on the side of the railroad track, at a place now called Cloverfield, two or three hundred yards from said switch, and about a half-mile north of said depot on Jno. T. Gilmer's land; that during all the time from 1857-8 to April, 1880, the local freight trains on said road stopped at or opposite to said switch, whenever a proper signal was given, and took on and put off freight for plaintiff; that the accommodation passenger trains also stopped, and put off and took on passengers from said switch or platform, whenever the proper signal was given; and that the agents of the railroad refused to stop the through trains, passenger and freight, except at Morganville. It was shown, also, that said G. Jordan continued to be the general superintendent of said railroad until after the purchase of the property by the defendant; that during this time, while said Jordan was superintendent, there was no cause of complaint on the part of plaintiff; that in the year 1880, between April and the Fall, while one Dunham was the superintendent of the road, no train was stopped when such signals were given." The plaintiff read in evidence, "for the purpose of showing notice to the defendant," several letters which had passed between him and said Dunham in the summer of 1880, in one of which he had inclosed a copy of said written instrument; and the court admitted these letters, against the objection and exception of the defendant. The court permitted the plaintiff to prove, also, against the objection of the defendant, "in order to show that defendant would not permit him to cultivate any portion of the right of way, that Ber-

muda grass was planted on said right of way by the defendant in 1881–2;" also, that his land, which contained about eleven hundred acres, was worth about $10 per acre, and that it would be worth about $20 per acre, if the defendant's trains were stopped as stipulated. The defendant duly excepted to the admission of each part of this evidence, and also reserved numerous other exceptions to the admission of evidence.

The court charged the jury, among other things, "that the measure of damages, if they found for the plaintiff, would be the difference between the present value of the lands, and what would be their value per acre if the defendant had complied with all the stipulations of said written contract signed by Pollard." The defendant excepted to this charge, and requested the following: "If the plaintiff is entitled to recover, he can only recover such actual damage as has resulted to him before the commencement of this suit;" also, "that the value of the plaintiff's adjacent lands ought to have no influence upon the amount of damages." The court refused each of these charges, and the defendant excepted to their refusal.

The defendant also requested the following charge, and excepted to its refusal: "Even if the evidence satisfies the jury that Pollard had authority to make the contract set forth in the complaint; yet, if the defendant in this case, being, as the admitted facts show, the purchaser for value of said railroad and its property, in November, 1874, is not bound by said contract, unless the evidence shows that said purchasers had notice of said right in Gilmer before they bought and paid for said railroad bonds."

The assignments of error, 49 in number, embrace all the rulings of the court on the pleadings and evidence, the charges given, and the refusal of charges asked.

WATTS & SON, for appellant.—(1.) The complaint was defective, and the demurrer to it ought to have been sustained. It avers only legal conclusions, and does not state facts which show a liability on the part of the defendant. There is no averment that the right of way was not used by the defendant; nor that the stopping of trains would not have interfered with the running schedule of trains. (2.) The contract sued on ought not to have been admitted as evidence, without proof of its execution. It did not appear on its face to have been signed by the defendant, its attor-

ney or agent, and was not averred to have been so executed.
Code § 2770. (3.) The contract was not binding on the
Alabama & Florida Railroad Company, without proof of
Pollard's authority to sign it.—*Standifer v. Swann*, 78 Ala.
88; *Ware v. Swann*, 79 Ala. 330. If ratified by that com-
pany, it could only operate as an equitable estoppel, which
is not cognizable in a court of law. (4.) The contract did
not bind the defendant to stop all passenger trains, nor all
freight trains, when the signals were given; and the court
erred in so construing it. (5.) The rule for the measure of
damages was not correctly stated to the jury. The cove-
nants run with the land, as this court decided on the former
appeal.—79 Ala. 569. Such a covenant authorizes any as-
signee, or vendee of the land, to sue for a breach; and a re-
covery by plaintiff in this action would be no bar to a sub-
sequent action, for the breach is continuous.—1 Sutherland
on Damages, 198,202; *Beach v. Crain*, 2 Comst. (N. Y.)
86; *Ferguson v. Ferguson, Ib.* 360; *Schell v. Plumb*,
55 N. Y. 592; 47 Barb. 550; *Warner v. Bacon*, 8 Gray,
Mass. 397; *Mahon v. Central R. R. Co.*, 24 N. Y. 658;
*Phelps v. N. H. & N. R. R. Co.*, 43 Conn. 453. (6.)
All the assignments of error are insisted on.

LESTER C. SMITH, and TOMPKINS, LONDON & TROY, *contra.*
(1.) The sufficiency of the complaint was decided on the
former appeal, and is fully supported by the authorities.
*Bank v. Segar*, 39 N. J. Law, 173; *Hartung v. Witte*,
59 Wisc. 285; *Hazlett v. Sinclair*, 76 Md. 488; *Fitch v.
Johnson*, 104 Ill. 111; 64 Ga. 492. (2.) The execution of
the contract was not put in issue by the pleadings.—Code,
§ 2770; 1 Chitty's Pl. 135; *Turnpike Co. v. McCullough*,
25 Penn. St. 303. (3.) The contract was properly admitted
as evidence, without proof of the authority of Pollard to
execute it.—*Thorington v. Gould*, 59 Ala. 461. The rail-
road company took possession of the right of way, and used
it for corporate purposes, thereby ratifying the acts of
Pollard.—86 N. Y. 200; 4 Amer. & E. R. R. Cases, 114.
(4.) The statute of limitations of six years was no defense
to the action.—*Hays v. Anderson*, 57 Ala. 374; *Flournoy
v. Lyon*, 70 Ala. 308; *Galbreath v. Cole*, 61 Ala. 139; *Foster
v. Napier*, 71 Ala. 595. (5.) The defendant can not claim
protection against the covenant, as a *bona fide* purchaser
without notice.—*Spence v. M. & M. Railway Co.*, 79 Ala.
576; 59 Ala. 139; *Shorter v. Frazer*, 64 Ala. 74; *Derrick*

*v. Brown*, 66 Ala. 162; 1 Dev. Deeds, § 671. That plaintiff was a creditor of the former railroad company, see *Bibb v. Freeman*, 59 Ala. 612; *Gannard v. Eslava*, 20 Ala. 732; *Anderson v. Anderson*, 64 Ala. 403; 37 N. J. Law, 282; 28 Conn. 103; *Fearn v. Ward*, 65 Ala. 33. (6.) The measure of damages was correctly stated.—2 Sutherland on Damages, 135; *Trustees v. Turner*, 71 Ala. 429; *Clark v. Zeigler*, 79 Ala. 350; 108 Mass. 175; 74 Penn. St. 208.

SOMERVILLE, J.—1. In *Gilmer v. Mobile & Montgomery Railway Co.*, 79 Ala. 569 (s. c., 58 Amer. Rep. 623), we decided that the covenants, for the breach of which the present action is brought, were such as would be construed to "run with the land," so as to be binding in law upon the defendant corporation, as assignee of the original covenantor, if chargeable with notice of the existence of these covenants. We are satisfied with this conclusion, as one fully sustained by judicial authority.—*Morse v. Gardner*, 47 Amer. Dec., *Note* on pp. 569–577, and cases cited.

2. We also adhere to the conclusion, that the demurrer to the complaint was properly overruled. Its averments show with sufficient certainty a total breach of the alleged covenant to establish and continue a flag-station or depot on the plaintiff's land, where both passenger and freight trains would stop, on the giving of proper and usual signals, for the transportation of passengers and certain kinds of farm produce. If the stopping of the trains, as agreed to be done, would have seriously interfered with the running of the company's schedule, this was matter of defense, to be averred and proved by the defendant, as coming more properly within the knowledge of the railroad officials than that of the plaintiff. So with the covenant to permit the plaintiff to cultivate the right of way granted by him, "so long as the privilege might not interfere with the wants and requirements of the railroad." This would also be matter of defense, the *onus* of averring and proving which was on the defendant, without the necessity of its being negatived by plaintiff in the first instance.

3. The instrument sued on purports to be executed by Charles T. Pollard, president, for and in behalf of the Alabama & Florida Railroad Company, and is under seal. The defendant company is the successor of that corporation, and is in possession of the right of way in controversy, claiming by privity of ownership from said corporation. The com-

plaint avers facts which show that the covenants sued on run
with the land, and are as binding in law on the defendant as
they were on the original grantee and covenantor. Under
this state of the pleadings, the Circuit Court properly ruled
that, in the absence of a sworn plea of *non est factum*, putting
in issue the execution of the paper, it was admissible in
evidence without preliminary proof of its execution. It is
true that a strict construction of the statute would confine
this privilege to the written instruments which are the foun-
dation of suits, and which purport to be "signed by the
*defendant*, his partner, agent, or attorney in fact."—Code,
1886, § 2770. But, construing this section in connection
with other sections of the Code on the same subject-matter,
our decisions have given a more liberal interpretation to it.
Section 2676 of the Code requires every plea to be sworn to,
which denies the execution by the defendant of any written
instrument, the foundation of the suit, or the assignment of
the same, whether it purports to be signed by him or not.
This includes all cases where the instrument declared on is
averred to be the defendant's act in law, or is shown, by
proper allegation of fact, to impose a legal obligation or duty
on him.—*Lazarus v. Shearer*, 2 Ala. 718. So, under
section 2771, "it is not necessary to prove the execution or
assignment of any instrument offered in evidence under the
plea of set-off, or other plea in bar, unless the plaintiff put
the exe-ution or assignment thereof in issue by a replica-
tion verified by affidavit."—Code, 1886, § 2771. The pur-
pose of these various statutes is to require the defendant to
put in issue, by sworn plea, every written instrument which
is the foundation of the suit, and which, taken in connection
with the averments of the complaint, imposes on him the
same legal obligation or duty which it purports to impose on
the maker or obligor who signed it. A familiar illustration
of the principle is found in a suit against an executor or
administrator, on a paper executed by a deceased testator or
intestate. It applies where, by privity of law or estate, the
obligations of an instrument are cast on a defendant, although
he did not sign the paper in person.—*Ala. Coal Mining
Co. v. Brainard*, 35 Ala. 476; *Montgomery & Eufaula R.
R. Co. v. Prebles*, 44 Ala. 255; *Bryan v. Wilson*, 27 Ala.
208; *McWhorter v. Lewis*, 4 Ala. 198; *Wimberly v. Dallas*,
52 Ala. 196. This construction is strengthened by the fact,
that if, in an action of covenant, averring breaches, the deed
or instrument is not put in issue by the plea of *non est*

28

[Mobile & Montgomery Railway Co. v. Gilmer.]

*factum*, the defendant, even by the rules of common law, was understood to admit so much of the instrument as is set out in the declaration.—2 Greenl. Ev., §§ 234, 247; Stephen's Plead. (Tyler), 171.

4. The demurrer to the first plea of the defendant was properly sustained. Being a general denial of all the allegations of the complaint, it was a denial of the execution of the written instrument which was the foundation of the suit, and should have been supported by affidavit. The want of affidavit is a defect which is available on demurrer.—*McWhorter v. Lewis*, 4 Ala. 198; *Bryan v. Wilson*, 27 Ala. 208.

5. The action, being founded on a writing under seal, would not be barred by any period of limitation less than ten years.—Code, 1886, § 2614. The demurrers to pleas number two and three, setting up the statute of limitations of one and six years, were properly sustained.

6. To make the contract sued on binding on the Alabama & Florida Railroad Company, in whose behalf it purported to be executed, it was not necessary that the act of Pollard in executing it should have been originally authorized by a resolution of the board of directors, appearing among the corporate proceedings, or minutes of the company; nor that it should have been ratified in this manner. The deed of Gilmer, granting the right of way, and this instrument executed by Pollard, stating the conditions and limitations attending its delivery, were executed contemporaneously, bear the same date, and refer on their face to the same subject-matter. They constitute, therefore, in legal effect but one instrument, and may be so connected by parol evidence, if necessary.—*Robbins v. Webb*, 68 Ala. 393. The railroad officials, having accepted the deed under which their title was acquired, were chargeable with notice of the limitations and covenants contained in this instrument, which was part and parcel of the deed. The knowledge of Pollard, as president, and of Jordan, as general superintendent, who are shown to have had full parol authority to arrange all rights of way, and who together made this contract, must be construed to be the knowledge of their principal—the company. The acceptance of the deed, with the benefits of the contract, and possession under it by the railroad, was a full ratification of the act of its agent, and estopped that corporation from denying the fact of the agent's lawful appointment, as well as his authority to act in the premises.—*Ala. Gr. So. R. R. Co. v. S. & N. R. R. Co.*, 84 Ala. 570. The

contract or covenants sued on involve no question as to the conveyance of the *legal* title to lands by an agent of a corporation, without written authority. Hence the cases of *Standifer v. Swann*, 78 Ala. 88, and *Ware v. Swann*, 79 Ala. 330, cited by defendant's counsel, have no bearing on this case.—See *Swann v. Miller*, 82 Ala. 530, 537.

7. The facts of the case show, also, that the defendant is chargeable with *notice* of the existence of these covenants, which run with, and burden the land occupied as a right of way. The plaintiff, Gilmer, was clearly a "creditor" of the Alabama & Florida Railroad Company, within the meaning of section six of the act of the General Assembly, approved August 5th, 1868, which authorized a consolidation of said road with the Mobile & Great Northern Railroad Company, under the new name of the Mobile & Montgomery Railroad Company. The word *creditor*, as there used, includes unsecured as well as secured creditors.—*M. & W. R. R. Co. v. Branch*, 59 Ala. 139. The agreement sued on bears date March 7, 1868—several months prior to the consolidation. The damage recovered by the plaintiff arose from the breach of this agreement. We have repeatedly held, that one who has a claim or demand arising from a contract in existence at the time of a fraudulent conveyance, is a creditor within the meaning of the statute of frauds, although he had no existing cause of action at the time such contract was made, by reason of the contingent liability of the debtor. A surety is accordingly held to be a creditor from the date of his suretyship, and irrespective of the time when his cause of action accrued.—*Fearn v. Ward*, 65 Ala. 33. And so the covenantee in a deed of warranty is deemed a creditor, not from the time of his eviction, but from the time the covenant was executed.—*Bibb v. Freeman*, 59 Ala. 612. For like reasons, the plaintiff must be held to be a creditor of the Alabama & Florida Railroad Company, from the *date of his contract*, from the breach of which the present cause of action arose, and not from the time of the actual breach which entitled him to sue on it.

8. This brings the case fully within the influence of *Spence v. Mobile & Montgomery Railway Co.*, 79 Ala. 576, where we construed section six of the act now under consideration, which provides that the consolidation of the said companies under the new name "shall in no way affect the rights of the creditors of such companies, and their separate existence shall be continued as to all the rights and remedies

of creditors."—Acts 1868, p. 82.  In that case, the precise
argument was made which is here urged upon our considera-
tion, viz., that the stockholders who organized the defendant
corporation—The Mobile & Montgomery Railway Co.—were
*bona fide* purchasers of certain property of the Alabama &
Florida Railroad Company, because they were the innocent
holders of the mortgage bonds of the road, and had bought
the property at a regular mortgage sale, without notice of
any prior lien or equity attaching to it.  It was held that the
bondholders were chargeable with notice of every thing con-
tained in the act of incorporation which created the company
with which they were dealing, analogously to the notice im-
puted by law to the purchasers of land titles, who are com-
pelled to know all they might learn by a diligent examination
of the links of their chain of title.  Such an examination
would have informed them that the rights of creditors were
unaffected by the sale, and that the plaintiff was a creditor,
whose demand inhered to and followed the land in contro-
versy, and bound it in the hands of all assignees chargeable
with notice of the incumbrance.

There are other reasons urged by appellee's counsel, which
prove equally fatal to the defense based on this ground; but
these we need not consider.

9.  We entertain no doubt, that the measure of damages
in this case, for the breach of the covenants sued on, was
properly stated by the circuit judge, as the difference between
the present value of the lands, and what the value would
have been had all the stipulations in the contract been sub-
stantially performed; or, in other words, the *additional value*
which would have accrued to the plaintiff's land in the event
the covenants had been performed.  The promise of the
faithful performance of these covenants as to establishing
and maintaining a depot near the plaintiff's residence, and
allowing him to cultivate the right of way, was the considera-
tion of the deed made by him to the railroad.  The covenants
themselves qualify the estate taken by the railroad, and di-
minished its value.  They also enured to the benefit of the
adjoining land owned by Gilmer, and increased its market
value, as they were intended to do.  This appreciation in
value was clearly within the legal, if not the actual con-
templation of the contracting parties.  The loss of this in-
creased value is the natural and proximate result of the de-
fendant's breach of these covenants, and is the fairest and
closest approximation of the actual damage sustained by him,

[Mobile & Montgomery Railway Co. v. Gilmer.]

which the law is capable of furnishing. It is, in fact, the precise pecuniary loss which the plaintiff has suffered by the defendant's total breach of the contract. The adjudged cases fully support this view, as to the measure of the plaintiff's damages.—*Watterson v. Alleghany R. R. Co,*, 74 Penn. St. 208; s. c., 8 Amer. Railway Rep. 30; *Clark v. Zeigler*, 79 Ala. 350; s. c., *ante*, 154; *Bronson v. Coffin*, 108 Mass. 175; s. c., 11 Amer. Rep. 335; *Stoudenmire v. DeBardelaben*, *ante*, 85; s. c., 4 So. Rep. 723; 3 Suth. Dam. 135.

10. The plaintiff was entitled, as he has elected to do in this action, to declare for a total breach of the entire agreement, and combine his claim for damages running through many years in a single action. This would avoid a multiplicity of vexatious suits, which it is both the pleasure of the courts and the policy of the law to accomplish, where it can be done without working injustice to either party. It would be discreditable to the administration of justice in our courts, to drive a litigant to redress his rights by a hundred suits, where one would answer his purpose quite as well, and do no wrong to his adversary.—*Trustees of Howard College v. Turner*, 71 Ala. 429; s. c., 46 Amer. Rep. 326; *Erie R. R. Co. v. Douthet*, 88 Penn. St. 243; s. c., 32 Amer. Rep. 451.

11. The correspondence and other transactions between the plaintiff and the officers of the Alabama & Florida Railroad Company, which occurred before the execution of the deeds and covenant relating to the right of way, were properly admitted in evidence, as tending to prove permissive occupation, and to rebut the idea of adverse possession by one from whom the defendant derived title.

The rulings of the Circuit Court, in our opinion, can all be construed to harmonize with these principles.

We have examined the other errors assigned, and can discover nothing which can operate to reverse the judgment, which is accordingly affirmed.

CLOPTON, J., not sitting.