Argued October 31, 1892; decided December 12, 1892; re-argued March 20, 1893; affirmed April 19, 1893.

## N. J. BLAGEN v. D. P. THOMPSON ET AL.

[ S. C. 31 Pac. Rep. 647; 18 L. R. A. 315.]

1. CONTEMPORANEOUS AGREEMENTS.— When two written contracts or agreements are entered into between the same parties and concerning the same subject matter, whether made simultaneously or on different days, they may be regarded as one contract and construed together. *Dean* v. *Lawham*, 7 Or. 422, and *Kruse* v. *Prindle*, 8 Or. 158, approved.   But an executory contract by a railway corporation to sell to defendants certain franchises, with a stipulation to secure and transfer certain additional rights of way, cannot be construed as part of an executed contract by which the individuals composing the corporation sold and delivered to the defendants their respective holdings of stock in the corporation, the defendants agreeing to complete and operate the railway over the route for which the corporation had agreed to secure the rights of way. The two contracts are made by different persons and relate to different subject matters.

2. BREACH OF CONTRACT — SPECULATIVE DAMAGES.— The loss of the profits or gains that would have accrued out of a contract for the purchase of land, which the purchaser is obliged to surrender because of the failure of the defendant to construct a motor railway in accordance with a contract with the purchaser, when the defendant knew that the purchaser wished the line built to enhance the value of his contract of purchase, may be included in the damages for breach of the contract to build the motor railway.

3. CONTRACTS — ACTION FOR BREACH.— The surrender and cancellation of a contract for the purchase of land will not prevent the purchaser from recovering the damages sustained by the breach of a contract which a third party had made with him for the construction of a motor railway, the purpose of which was to enhance the value of such land, since it was the purchaser's duty to get out of his contract with as little loss as

possible before suing the third party in damages for his failure to build
the motor line.

4. BREACH OF CONTRACT—MEASURE OF DAMAGES.—The measure of damages
for breach of contract to build a motor railway to connect with the busi-
ness portion of a city a tract of land which one of the parties had just
purchased with the view of platting and selling it for suburban residences,
is the difference between the value of the land on the day the road should
have been completed, not less than the agreed purchase price, and what
its value would have been on that day with the road completed and in
operation.

5. UNCERTAIN OR CONTINGENT DAMAGES.—The rule that damages which are
uncertain or contingent cannot be recovered, does not apply to an uncer-
tainty as to the amount of the benefit or gain to be derived from per-
formance, but to an uncertainty or contingency as to whether any such
gain or benefit would be derived at all.

6. EXPERT AND OPINION EVIDENCE.—Opinion evidence as to what the value
of land would have been if a railway had been constructed in accord-
ance with a contract, is admissible on the question of damages for breach
of the contract. *City of Portland* v. *Kamm*, 10 Or. 383, approved.

Multnomah County: E. D. SHATTUCK, Judge.

Action by N. J. Blagen against D. P. Thompson and
J. H. Smith for damages. Plaintiff had judgment for
$25,000 and defendants appeal. Reversed.

*Edward B. Watson (James F. Watson* on the brief), for
Appellant.

*Earl C. Bronaugh, Wm. D. Fenton,* and *Wm. M. Cake,
(Lewis L. McArthur* and *Harry M. Cake* on the brief), for
Respondents.

This is an action to recover damages for breach of
contract. The facts are that on March 26, 1890, a written
contract was entered into between plaintiff and J. H.
Lambert and wife, by the terms of which he purchased
of them for the sum of $150,000, about 255 acres of land
near the town of Milwaukie, and some three or four miles
south of Portland, paying the sum of $10,000 cash, and
agreeing to pay the further sum of $15,000 on or before
October 7, 1890, and the remainder of the purchase price
on or before five years from the date last named. This
property was purchased by plaintiff for the purpose and

with the design of subdividing it into lots and blocks and selling it for suburban residences.    About the same time, plaintiff, desiring to build a motor line from East Portland to the property for the purpose of making it accessible and otherwise developing the same, purchased for $5,000 all the subscribed stock of the Portland, Sellwood & Milwaukie Railway Company, a corporation which had been organized to build such road, and was the owner of certain franchises and rights of way on certain streets in East Portland and Sellwood and along the county road between said towns, and at once commenced to have the route of such road surveyed and located for the purpose of constructing a motor railway to and across the land so purchased by him of Lambert.    On the same day this survey was commenced certain other surveyors, acting for defendants and claiming a right to build a road along the same route, appeared upon the ground and commenced to survey another line along the county road covering the line staked out by the Portland & Sellwood Co.    Plaintiff then sought an interview with defendants, and negotiations were begun between them which finally resulted in a written proposition of date April 4, 1890, from defendants to the Portland & Sellwood Co., that if it would transfer to them its rights and franchises to construct and operate a motor line on certain streets in East Portland, and the right of way as surveyed by it from East Portland to the Lambert farm, except over two or three pieces of land, without any restrictions as to charges over said motor line, (except to residents and property owners on lands of Lambert near Milwaukie, who were to have twenty tickets for one dollar), they would pay to it, when the franchises and rights of way should be transferred free from all incumbrances, the sum of $6,000.00 (that being the amount plaintiff had paid for the stock and the company had expended for work on the proposed road), and the cost of all labor in grading and clearing the right of way since April 1, 1890.

    This proposition was accepted by the company; and

XXIII. Or.—16.

on April 5, 1890, a written contract was entered into be·tween it and the defendants, by which the company was to sell and the defendants to purchase on or before May 19, 1890, all its franchises and rights of way for said motor line for the sum of $6,000.00 and the cost of all labor that might be performed by it upon the road in grading and clearing the right of way until the defendants should take charge of the construction of the line. The defendants also agreed in said contract to complete and have the said railway in operation along the line of survey as made by the said company from its terminus in East Portland to the south line of the Lambert place, by October 31, 1890, and to furnish to residents and property holders on said place transportation between Portland and the south line of the Lambert place at the rate of twenty tickets for one dollar, and to stop at three places on said land, to be designated by Lambert or his assigns. And the corporation agreed on its part to secure and convey to defendants on or before the time fixed in the contract, said rights of way and franchises, without restriction, except as aforesaid, from the south boundary line of East Portland to the south line of the Lambert place, excepting the rights of way through two or three pieces of land which the defendants were to secure for themselves.

This executory contract between defendants and the corporation seems never to have been carried out, but for some reason it was thought best, in place of transferring to defendants the franchises of the company as agreed upon, to sell and transfer to them all the stock in the company, and consequently on May 12, 1890, the contract for the breach of which this action was brought was entered into between defendants and plaintiff, and Lambert, Brown, and Cake, who held certain stock in the corporation in trust for plaintiff, by which the latter sold to the defendants all the stock of the company, and agreed upon demand to transfer the same on the books,

which contract, omitting the signatures of the parties, is as follows:—

"MEMORANDUM OF AGREEMENT

"Made between D. P. Thompson, J. H. Smith, and W. E. Post, the parties of the first part, and N. J. Blagen, J. H. Lambert, C. W. Brown, H. M. Cake, and B. F. Smith, the parties of the second part—WITNESSETH: That in consideration of $6,539.30, to them in hand paid, the receipt whereof is hereby acknowledged, and in consideration of the covenants of the said D. P. Thompson, J. H. Smith, and W. E. Post herein contained, the parties of the second part hereby sell, assign, and transfer their stock in the Portland, Sellwood & Milwaukie Railway Company, and agree to, upon demand, assign their stock upon the books of said company to the said D. P. Thompson, J. H. Smith, and W. E. Post, hereby declaring that they own the number of shares as follows: N. J. Blagen, 1,403 shares; J. H. Lambert, 200 shares; C. W. Brown, 1 share; H. M. Cake, 1 share; B. F. Smith, — shares; and the said D. P. Thompson, J. H. Smith, and W. E. Post hereby agree, in consideration of the above, that they will construct in a first-class manner, complete, and have in operation a steam railway motor line along the route surveyed by the said railway company from its terminus in the city of East Portland to the south line of J. H. Lambert's place, by the thirty first day of October, 1890 (delays caused by unavoidable injunction proceedings excepted); *second*, that they will furnish transportation to residents and property holders in the said tract of land known as the Lambert place, by a railway motor line along the route surveyed by the said railway company to the city of Portland, from any stopping places or stations established on the said Lambert place on the line of the said motor road, and from the city of Portland to any of the stopping places or stations on the said Lambert place, at the rate of twenty tickets for one dollar; and that all trains shall stop at three places or stations on the said Lambert place, to be designated by the said J. H. Lam-

bert or his assigns; *third*, that they will carry out and
fulfil all the obligations imposed upon the said Portland,
Sellwood & Milwaukie Railway Company by the written
and express terms of franchises granted to said company.

" IN WITNESS WHEREOF, the parties to these presents
have hereunto set their hands and seals, this twelfth day
of May, 1890."

The plaintiff and his associates fully complied with
the terms of this agreement on their part to be per-
formed, and did, on July 7, 1890, duly transfer to de-
fendants on the books of the corporation all their stock,
and the same has been ever since retained by them. The
defendants, however, wholly failed and neglected to build
said motor line, or any part thereof, and on September 1,
1890, the city of East Portland, by ordinance, revoked
the franchises theretofore granted by it to the Portland
& Sellwood Co. to construct its road upon the streets of
the city. Meanwhile, plaintiff, relying upon the contract
of defendants to build the road, had caused a large por-
tion of the Lambert place to be cleared off and surveyed
into lots and blocks, and had sold about one hundred lots
for the aggregate sum of $18,693.35, the purchasers pay-
ing therefor in cash a small part of the purchase price,
and agreeing to pay the remainder thereof, to wit, $14,-
797.25, in deferred installments. Under these circum-
stances the second payment from plaintiff to Lambert
being about to fall due, and perceiving that defendants
did not intend to build the road within the time agreed
upon, and could not do so because the franchises granted
by the city of East Portland had been revoked, and that
consequently he could sell no more lots, and would prob-
ably be bankrupt unless he could induce Lambert to re-
lease him from his contract of purchase, the plaintiff
applied to Lambert for a release and cancellation of his
contract, and did, on September 30, 1890, obtain such
release upon the best terms possible, which were the for
feiture of the cash payment of $10,000 and the surrender

to Lambert of all notes received by him for deferred payments on lots sold.

After the time had expired in which defendants agreed to construct and have in operation the motor line, plaintiff procured from Lambert, Brown, and Cake an assignment to him of all their rights under the contract of May 12, 1890, and of their right of action against defendants for the breach of said contract, and thereafter commenced this action to recover $146,001.96 damages. In his complaint he avers that at the time of entering into the contract of May 12th, and as a consideration and inducement for the execution thereof, the defendants were informed and well knew that he had purchased the Lambert land with the intention of subdividing the same into lots and blocks, and of causing said railway motor line to be constructed from Portland to and across that land in order to enhance the value thereof, and to enable him to sell the same for a profit, which would thereby accrue to him; and that relying upon the promise and agreement of defendants as contained in said writing, he cleared, surveyed, and platted a portion of the land, and disposed of the lots mentioned; that if the road had been built as agreed upon, the land would have been worth on October 31, 1890, the sum of $323,657.15; but by reason of the failure of defendants to keep and perform their contract and construct said road, he was disabled from completing his contract with Lambert for the purchase of the land, and was forced to and did lose the sum of $17,139.66 which he had paid on the purchase price, and was unable to sell any more of the property, whereby he was further damaged in the sum of $128,862.30, which would have been the net profits on the remainder of said lots and land on the thirty-first day of October, 1890, if defendants had built the motor line as they agreed to do.

The defendants allege in their answer, as an excuse for not building this road as they agreed to do, that the contracts of April 5th and May 12th were executed for the same consideration and to accomplish the same pur-

pose; that they impose the same obligations and liabilities upon the defendants; and that neither the plaintiff nor the corporation has received or transferred to them the rights of way mentioned in the contract of April 5th, and, therefore, without any fault or neglect on their part, they were and are wholly unable to build the road as provided in said agreements.    The trial in the court below resulted in a verdict and judgment in favor of the plaintiff for the sum of $25,000, from which defendants appeal, and assign error in the admission of testimony and the giving and refusal of certain instructions by the trial court.

BEAN, J. (after stating the facts.) — 1.    It is contended by counsel for defendants that the contract of April 5, 1890, between the Portland & Sellwood Co., in its corporate capacity, and defendants, in which the corporation agreed to procure the rights of way therein mentioned, should be construed and treated as part of the contract of May 12, 1890, entered into between defendants and plaintiff and his associates in their individual capacity, so as to hold them responsible for the failure, if any occurred, on the part of the corporation to fulfil its agreement as to procuring such rights of way.    When two written contracts are entered into between the same parties concerning the same subject matter, whether made simultaneously or on different days, they may, under some circumstances, be regarded as one contract and interpreted together: *Dean* v. *Lawham*, 7 Or. 422; *Kruse* v. *Prindle*, 8 Or. 158; Bishop on Contracts, § 165.    But the two contracts in question here are not between the same parties nor concerning the same subject matter.    The one is an executory contract, made by a corporation in its corporate capacity, for the sale to defendants of certain franchises then held and owned by it, and containing a stipulation on its part to secure and transfer to them additional rights of way over certain other designated portions of the route of the proposed motor line; and the other is an executed contract of sale of the stock of the corporation,

made by the plaintiff and his associates as natural persons, and acting in their individual capacity. The two contracts are therefore entirely separate and distinct, between different parties and concerning a different subject matter. In the one a corporation is a party; in the other, private individuals. By the one, the corporation agrees to sell and transfer to defendants certain property belonging to it; while by the other, the defendants purchased of plaintiff and his associates certain property belonging to them as individuals; and while it may be true that plaintiff and his associates were the stockholders, directors, and officers of the corporation at the time the contract of April 5, 1890, was entered into, yet they did not assume any personal responsibility in that contract, or become obligated as individuals to procure these rights of way. Nor does the fact that the consideration paid by defendants for the stock was the same in amount as agreed by them to be paid for the franchises of the corporation, in any way change or affect the liabilities or obligations of the parties as contained in the written contracts. Defendants, in place of requiring the corporation to comply with its contract to procure and transfer to them the stipulated rights of way, saw proper, by the consent of the corporation, to purchase and become the owners of all the stock, thereby obtaining control of the corporation and its property, with all its liabilities and obligations, among which was the agreement to procure and transfer the rights of way for the motor line, which was just as binding on the corporation after as before defendants became the owners of the stock. We think, therefore, the court below was clearly right in holding that the two contracts were not to be construed as one, and in instructing the jury that under the contract sued on plaintiff was under no obligations to procure or furnish the rights of way in question, or answer for the default of the corporation, if any occurred in so doing.

2. It is also claimed by counsel for defendants that the loss sustained by plaintiff, if any, and sought to be

recovered in this action as damages, arose not directly from the breach by defendants of their contract of May 12, 1890, but indirectly out of the failure of the plaintiff to fulfil his contract with Lambert for the purchase of the land, which he claims to be collateral to the contract sued on, and that such damages are too uncertain, remote, and speculative to be recovered in this action. This question is presented by a demurrer to the complaint, exceptions to the admissions in evidence of plaintiff's contract with Lambert, and to the giving and refusing of certain instructions by the trial court, which we shall not undertake to notice in detail, but for convenience shall consider together.

The difficulty in the determination of the question thus presented, and in like cases, lies not so much in the ascertainment of the law of the subject, as in its application to the facts of the particular case. The broad general rule in such cases, as we gather it from the authorities, is, that the plaintiff may recover such damages, including gains prevented as well as losses sustained, as may reasonably be supposed to have been within the contemplation of both parties at the time of the making of the contract as the proximate and natural consequence of a breach by defendants; and in determining what may reasonably be supposed to have been within the contemplation of the parties as the natural consequences of a breach, all the facts surrounding the execution of the contract and known to both parties may be considered, even if these be such as would not necessarily enter into it, if unknown to the defendant. It is on this principle that an injured party is allowed to charge the other with loss on collateral contracts, on proving notice, which in the absence of such notice, would not be considered within the contemplation of the parties : 1 Sutherland on Damages, 79 ; 1 Sedgwick on Damages, § 149 ; *Hadley* v. *Baxendale,* 9 Ex. 341 ; *Hammond* v. *Bussey,* 57 L. J. Q. B. 58 ; *Griffin* v. *Colver,* 16 N. Y. 489 ( 69 Am. Dec. 718 ); *Booth* v. *Spuyten Duyvil R. M. Co.* 60 N. Y 487 ;

*Hammer* v. *Schoenfelder*, 47 Wis. 455; *Messmore* v. *N. Y. Shot & Lead Co.* 40 N. Y. 422.   These and other authorities on this question are carefully collated and discussed in 1 Sedgwick on Damages, § 144 *et seq.*, and in 5 Am. & Eng. Ency. Law, title "Damages," and we shall therefore attempt no review of them but shall only refer to the admirable statement of the rule by Mr. Justice SELDEN, in *Griffin* v. *Colver*, 16 N. Y. 489 (69 Am. Dec. 718), "that the injured party is entitled to recover all his damages, including gains prevented as well as losses sustained; and this rule is subject to but two conditions, — the damages must be such as may fairly be supposed to have entered into the contemplation of the parties when they made the contract, that is, must be such as might naturally be expected to follow its violation; and they must be certain, both in their nature and in respect to the cause from which they proceed."

Now, in the case at bar, the damages sustained by plaintiff and sought to be recovered, if any, are, it seems to us, in view of the known facts surrounding the execution of the contract, such as may reasonably be supposed to have been within the contemplation of the parties at the time the contract was executed, as the proximate and natural consequences of a breach by defendants, and may be recovered in this action.   From the terms of the contract itself, as well as from all prior negotiations between the parties, it clearly appears that the defendants must have known at the time they purchased plaintiff's stock in the corporation and agreed to build the road by a stipulated time, that the object to be accomplished by the building of the road, so far as plaintiff was concerned, was to enhance the value of the Lambert land so that he might derive some profit therefrom.   The proposition of defendants made to the Portland & Sellwood Co., of which plaintiff was the president and sole stockholder, on April 4, 1890, in which they proposed to purchase the rights and franchises of the company, and to build the road by October 31, 1890 shows on its face that the Lam-

bert land was to be specially benefited by the proposed road, for the franchises were to be transferred without restrictions as to charges over the motor line, except to residents and property owners on such land, who were to have twenty tickets for one dollar. These same special privileges as to the Lambert land were carried through all subsequent negotiations and contracts between the parties, and clearly indicate that the sole object plaintiff had in view in making the contract, was to enhance the value of such land, and defendants must have known that the natural and probable result of a failure on their part to build the road, would be to prevent such enhanced value. The complaint alleges, and the evidence tends to prove, both from the contract itself and the circumstances surrounding its execution, that defendants knew at the time they made the contract to build the road, that plaintiff either owned or had some interest in the Lambert land, and that his object in securing the franchises and commencing to build the proposed road, was to enhance the value of such land and derive a profit therefrom. Under such circumstances, and with knowledge of the object and purpose of the proposed road, defendants agreed and contracted with plaintiff and his associates to purchase their stock in the company holding such franchises, and to build the road to such land within a stipulated time; notwithstanding this they failed to do so, in consequence of which plaintiff was unable to complete his contract for the purchase of the land, but was compelled to cancel it, and was thereby prevented from realizing the profits or gains which would have accrued to him had the contract been performed. Under such circumstances the loss of such profits or gains may be reasonably supposed to have been within the contemplation of the parties at the time the contract was made as the reasonable and probable consequence of the breach, because they must be taken to have known these consequences. As the gains prevented or losses sustained by plaintiff by the failure of defendants to build the proposed

road are represented by the profits which he would have received if such road had been built, and he had been enabled to keep his contract with Lambert for the purchase of the land, defendants are responsible for such losses, if they are chargeable with notice. As MASON, J., said in *Messmore* v. *N. Y. Shot & Lead Co.* 40 N. Y. 422, "It affirms nothing more than that where a party sustains a loss by reason of a breach of a contract, he shall, so far as money can do it, be placed in the same situation, with respect to damages, as if the contract had been performed."

3.  Nor does the fact that the plaintiff surrendered and cancelled his contract for the purchase of the land after the franchises under which defendants proposed to build the road had been revoked by the city of East Portland, prevent him from maintaining this action. If after it became apparent that defendants would not and could not build the road according to their contract, and on account thereof plaintiff found himself unable to comply with his contract with Lambert and purchase the land, he had a right, in order to save himself from greater loss, to make such terms with Lambert for the cancellation of the contract as he could, and then bring this action against defendants to recover such damages as he may have sustained by reason of the failure on their part.

4.  This brings us to the measure of damages in this case. The court below held that the damage claimed in this case is a damage connected with the land and accrued to whoever may have owned the land at the time the contract of defendants should have been fulfilled, and that since Lambert, who was the owner of the land at that time, had assigned to plaintiff his right of action for a breach of defendants' contract, he could maintain the action and recover whatever damages may have accrued to the land; and on this theory instructed the jury that the measure of damages is the difference between the value of the land on October 31, 1890, with the road built

and in operation, and its value without the road. We think there was error, both in giving the rule for the measure of the damages, and in holding that plaintiff could recover any damages which may have accrued to Lambert. This action is not brought to recover Lambert's damages, if any, nor does the complaint aver that he was in any way injured by defendants' breach of their contract to build the road; it is prosecuted to recover the gains prevented or losses sustained by plaintiff; and the evidence and measure of damages would materially differ in the two cases, assuming (but without deciding) that Lambert ever had a cause of action for a breach of defendants' contract. Lambert did not, in fact, own the stock which he assigned to defendants, but held it in trust for plaintiff; and when he executed the contract of May 12, 1890, he was acting for and in behalf of plaintiff, and the assignment of his right of action for a breach of this contract only operated to transfer to plaintiff that which in fact already belonged to him, and enabled him to maintain this action unembarrassed by any apparently outstanding right of action in Lambert or the other parties to the assignment, and for this purpose it was competent evidence.

This action is maintained in plaintiff's own right to recover such damages as he may have sustained, and the effect upon the value of the land of defendants' failure to build the road is only material as it affects the measure of damages and the amount he is entitled to recover. The rule for the measure of damages stated by the trial court, is erroneous, as applied to the facts of this case, because it fails to take into account the fact that plaintiff had agreed to pay for the land a stipulated sum, which, so far as he was concerned, fixed its minimum value; and his loss, if the land was not actually worth what he agreed to pay for it, and there was evidence to that effect, could certainly be only the difference between the price he was to pay under his contract, and what its value would have

been on October 31, 1890, with the road built and in operation.

The prejudicial effect of the rule adopted by the trial court is apparent when it is considered that plaintiff was to pay for the land five hundred and eighty-eight dollars and twenty-three cents an acre under his contract with Lambert, and he himself testified that the land was not worth at the time he contracted for its purchase to exceed five hundred dollars an acre, without a motor line or the prospect of one; so that the difference between its value without a road and what he agreed to pay for it, was, according to his own testimony, within about two thousand and five hundred dollars of the verdict in this case. The true rule for the measure of damages for a breach of the contract sued on, as applied to the facts of this case, in our opinion, is the difference in the value of the Lambert land on the thirty-first day of October, 1890, without the road, not less in amount, however, than the price plaintiff agreed to pay for it, and what its value would have been on that day with the road completed and in operation. This appreciation in the value of the land, if any, was, it seems to us, clearly within the legal if not the actual contemplation of the parties at the time the contract was made. And the loss of this increased value is the proximate and natural consequence of defendants' breach, and is the fairest and closest approximation of the actual pecuniary loss sustained by plaintiff which the law is capable of furnishing. This view as to the measure of plaintiff's damages seems to be fully supported by the adjudged cases: *Mobile Railway Co.* v. *Gilmer*, 85 Ala. 422 (5 So. Rep. 138); *Louisville Railway Co.* v. *Sumner*, 106 Ind. 55 (5 N. E. Rep. 404); *Watterson* v. *Railway Co.* 74 Pa. St. 208; *Wilson* v. *Railway Co.* 9 Chan. App. 279; *Bronson* v. *Coffin*, 108 Mass. 175; *Houston Railway Co.* v. *Malloy*, 64 Tex. 607.

5.   As defendants failed and neglected to build the road within the stipulated time, or at all, it may be difficult for plaintiff to prove with exactness what would have

been the value of the land with the contract fulfilled; but such uncertainty does not prevent him from recovering such damages as he may be able to prove. He is only required to give such evidence as the nature of the case will permit bearing upon the matter of his damages and legally tending to prove such value: *O'Brien* v. *Society*, 117 N. Y. 310 (22 N. E. Rep. 954); *Huse Ice Co.* v. *Heinze*, 102 Mo. 245 (14 S. W. Rep. 756). Where one violates and entirely repudiates his contract with another, the damages sustained by the injured party are, as EARL, J., said, "nearly always involved in some uncertainty and contingency; usually they are to be worked out in the future, and they can be determined only approximately upon reasonable conjecture and probable estimates. They may be so uncertain, contingent, and imaginary as to be incapable of adequate proof, and then they cannot be recovered because they cannot be proved. But when it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing on account of such uncertainty any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of the damages which he has caused is uncertain": *Wakeman* v. *Wheeler & Wilson Mfg. Co.* 101 N. Y. 209 (4 N. E. Rep. 264). The rule that damages which are uncertain or contingent cannot be recovered, does not embrace an uncertainty as to the value of the benefit or gain to be derived from the performance of the contract, but an uncertainty or contingency as to whether such gain or benefit would be derived at all. It only applies to such damages as are not the certain result of the breach, and not to such as are the certain result but uncertain in amount. Now, in this case, it is certain, under the facts as he claims them to be, that plaintiff has sustained some loss as the proximate and natural consequences of the breach of defendants, and under such circumstances the law will adopt that mode of estimating the damages

which is most certain and definite, and it seems to us the rule we have suggested most nearly meets the requirements of the law.

6. It is also claimed that the trial court erred in the admission of certain opinion evidence as to what the value of the Lambert place would have been on October 31, 1890, if defendants had complied with their contract and built the motor line as they agreed to do. A number of witnesses were called by plaintiff who were qualified to speak from business experience, from familiarity with the values of real estate in and about Portland, and the effect upon such values of the construction and operation of suburban motor lines, as well as from a knowledge and familiarity with the situation, location, character, and quality of the Lambert place, and were permitted by the trial court, against defendants' objection and exception, to give their opinions as to what that place would have been worth on October 31, 1890, had defendants fulfilled their contract and constructed the motor line in accordance with their agreement. Two objections are urged to the competency of this testimony: *First*, that the fact sought to be proved is so remote and speculative as not to be a proper item of damages in this case; and, *second*, it is not a matter upon which opinion or expert testimony is admissible. In the view we have taken of the proper measure of damages in this case, it is only necessary for us to consider the last objection stated.

It is undoubtedly true, as a general rule, that a witness is only permitted to testify to facts within his own knowledge, and not to inferences or opinions, but to this rule there are certain exceptions; and one of these exceptions is, that when the value of real estate, which is always largely a matter of opinion, is in controversy, persons who are acquainted with the property in question, and know the value of real estate in the same neighborhood, are competent to give their opinion as to its value. "These opinions are admissible," says GRAY, J., "not as being the opinions of experts, strictly so-called, for

they are not founded on special study or training, or professional experience; but rather from necessity, upon the ground that they depend upon knowledge which any one may acquire, but which the jury may not have, and that they are the most satisfactory and often the only attainable evidence of the fact to be proved": *Swan* v. *Middlesex,* 101 Mass. 177. Indeed, the courts are practically unanimous in following this rule: Rogers on Exp. Tes. § 155; Lawson Exp. Ev. 435; 3 Sedg. Dam. § 1294; 1 Suth. Dam. 786, 798; 1 Rice on Evidence, 335.

Nor do we understand that counsel for defendants seriously controverts the rule as above stated, but he contends that such evidence must be confined to the present or past value of the land, and not to its value under other and wholly different circumstances; and in support of his contention relies upon a series of New York cases, all which are founded on *Roberts* v. *Railway Co.* 128 N. Y. 455 (28 N. E. Rep. 486; 13 L. R. A. 499), which was an action by an abutting owner to restrain the operation and maintenance of an elevated railroad in the street in front of his property. The trial court allowed and permitted a witness who was familiar with the plaintiff's property and its value, to testify to what, in his opinion, the property was damaged by the presence of the construction and operation of the road, and to what it would be worth without the road; but on an appeal the evidence was held to be incompetent and inadmissible, but by a divided court. The majority opinion is based entirely upon the previous decisions in that state; and after a careful and exhaustive review and examination of them, Mr. Justice PECKHAM, speaking for the majority of the court, concluded, under the rule in that state, that while a competent witness might give his opinion as to the present or past value of real estate, because it is founded on facts that now exist or once existed, he could not testify as to its value under other or wholly different circumstances, because such evidence is uncertain and speculative, and would invade the province of the court or jury, whose

duty alone it is to determine the amount of damages. Mr. Justice GRAY, in an able and learned dissenting opinion, in which Chief Justice RUGER concurred, maintained that the evidence was competent both on principle and the authorities of that state ; and while the opinion of the majority of the court is in harmony with the former adjudications of New York, yet as an original question, we are inclined to think the better reason as well as weight of authority from other states is with the minority opinion.

This question has never been finally adjudicated in this state, although we understand the practice at the various circuits has been to admit such evidence; and we are therefore for the first time confronted with the question as to whether, in cases where the amount of recovery depends upon the difference in the value of land in its present condition and what it would be worth under different circumstances,—such as the location of a railroad or a street or public highway over it,—the opinions of witnesses qualified to speak upon the subject are admissible in evidence as to what the land would be worth in its changed condition. It seems manifest that such evidence, from a well-informed and intelligent witness, would materially aid and assist the jury in arriving at a just conclusion, and without its assistance the verdict would ordinarily be the merest speculation. The situation, location, and character of the land, and of the proposed improvement or burden, may be accurately and minutely described, and yet the jury be wholly unable from such evidence alone to form an intelligent opinion as to the probable effect of such proposed improvement or burden upon the value of the land. As was said by ELLIOTT, J.: "Of what assistance to a jury composed of clergymen, merchants, and bankers would be a description of the minutest accuracy without some estimate of value by a competent witness ? Possibly it would enable such jury to form a crude conjecture; it would do but little more": *Yost* v. *Conroy,* 92 Ind. 467. And in the

language of SKINNER, J., in *Railroad Company* v. *Van Horn*, 18 Ill. 259, "To describe to a jury a piece of ground, however minutely, with its supposed adaptations to use, its advantages and disadvantages, and demand of them upon this information alone a verdict as to its value, would be merely farcical; and this, indeed, is all that can be done to enable them to arrive at a conclusion as to the value, unless the witnesses are allowed to state their judgment or opinion, together with the facts upon which such opinion is founded." If, as the authorities all agree, skilled evidence is admissible to prove the value of land in its present condition, why should it be deemed inadmissible to prove its value under different circumstances? In the one case, it is competent on the ground of obvious necessity; and because no more definite knowledge is to be had, and for the same reason it seems to us it should be admitted in the other.

It is suggested that such evidence is speculative and unreliable, but the same objection can be urged with equal force to the admission of expert or skilled evidence in any case; and if we hold this evidence incompetent on that account, it seems to us we would be shutting the door against the admission of opinion evidence in all classes of cases, for if the objection is valid in the one instance so it is in all. The jury are not bound to take such evidence as true, but must exercise their own judgment in determining from it and all the other facts in evidence before them, what the real merits of the case are. They are only required to give it such weight and effect as they may think it deserves, in view of all the facts and circumstances. The witness may and should be required to detail to the jury, so far as possible, the facts and circumstances upon which his opinion is founded, so they may judge of its value as evidence; and from these and all the other evidence in the case, together with the opinion of the witness, if they think it deserving of any weight, their verdict should be formed.

It is also claimed that such evidence invades the

province of the jury, where the amount of damages depends entirely, as in the case at bar, upon the question of value.    But this question is not directly presented by this record, for the evidence admitted was not the opinions of the witnesses as to the amount of plaintiff's damages, but their opinion as to the probable value of the Lambert place with the motor line built and in operation on October 31, 1890; and in no case that we have been able to find, except the one from New York, has the opinion of witnesses as to value been excluded because the questions of damages and value were identical.    In many of the states, in such case a witness is not allowed to state his opinion as to the amount of damages, but only as to the value of the land before and after the contemplated improvement or burden, leaving the subtraction to be made by the jury; but Mr. Rogers says the weight of authority as well as reason is in favor of allowing the witness to express his opinion as to the amount of damages, as it is but a mere mathematical calculation: Rogers on Expert Testimony, 369, where the authorities on both sides are collated.    And this seems to be the rule in this state, for in the *City of Portland* v. *Kamm*, 10 Or. 383, which was a proceeding to condemn land for a street, this court held, WATSON, C. J., delivering the opinion, that it was competent to ask a witness the following question: "What in your opinion is the damage to that portion of the tract of land belonging to defendant Kamm which lies within one hundred feet of the proposed street by reason of the laying out of said street?". This case would also seem to recognize the rule that the opinion of a competent witness should not be confined to the past or present value of land, but may be given as to its value under other and different conditions; for the inquiry of the witness was not as to the present value of the Kamm land, but what would be its condition after the opening of the proposed street.    A careful examination of the books and cases has satisfied us that in a case like the one at bar, where the amount of damages depends upon

the value of the land with and without the contemplated improvement, a witness competent to speak upon the subject may state his opinion of the value of the land with and without the proposed improvement. Judge REDFIELD, in speaking of the competency of opinion evidence in similar cases, says: ''One may enumerate some of the leading facts upon which such an opinion is based; but, after all, the testimony as to facts is excessively meager without the opinion of the witness, either upon the very subject of inquiry, or some one as near it as can be supposed. Hence, in those courts where the opinion of witnesses in regard to the value of property, real or personal, is not admitted, it leads to sundry shifts and evasions in the course of the examination of witnesses upon that subject, which while it is not a little embarrassing in itself, at the same time illustrates the inconsistency, not to say absurdity, of the rule: 1 Redfield on Railways, 289. And in Mills on Eminent Domain, § 165, it is said that ''the general rule is that witnesses shall not testify how much the property is damaged, or give their opinion as to the amount of damages: they may testify as to the value of property, and as to the value of property before and after the improvement, but not as to the effect of the change in adding to or taking from such value. The extent of damages is to be proved by facts, and estimated by the jury. Hence, a witness cannot be asked the value of the land with the strip taken out. Notwithstanding the array of authorities above cited, there seems to be a growing tendency to allow witnesses to give an opinion on the amount of damages. It can hardly be seen how the jury can with any greater fairness arrive at the amount of damages by subtracting for themselves the present value from the former value than by allowing the witness to do the same thing.'' Mr. Pierce, in his work on Railroads, page 227, says: ''Opinions are admissible as to the amount of damages or benefit resulting to an estate from the construction and working of a railroad. The amount may

also be calculated by comparing the valuation of the property before and after the taking as made by the wit-nesses—a method which is relieved by the objection that the amount of the damages is the issue to be found by the jury." In support of the text, the author cites cases from most of the states of the union.

In the carefully considered case of *Yost* v. *Conroy*, 92 Ind. 464, which was an action to condemn land for a public ditch, it was held by Judge ELLIOTT "that the opinion of one acquainted with the land, as to its value with and without the ditch, was proper evidence." So in *Swan* v. *Middlesex*, 101 Mass. 173, on the question of the injury to an estate by taking part of it to widen a street, it was held compent for a witness to testify to "what in his opinion would be the effect upon the value of the estate in question of widening the street and cut-ting off the land and trees." And in *Snow* v. *Railroad Co.* 65 Me. 250, which was a proceeding to condemn land for railway purposes, it was held competent for persons acquainted with the land to state their opinions as to its value, or the amount of damages done if all the land is not to be taken. The following authorities, in addition to those already cited, are also in point, and may be referred to in connection with this decision: Wharton on Evidence, § 450; 1 Rice on Evidence, 335; *Hosher* v. *Railroad Co.* 60 Mo. 303; *Railroad Co.* v. *Pugh*, 85 Ind. 279; *White Deer, etc. Co.* v. *Sassaman*, 67 Pa. St. 415; *Lehmick* v. *St. Paul, etc. R. R. Co.* 19 Minn. 464; *Sexton* v. *North Bridge Water*, 116 Mass. 200; *Tucker* v. *R. R. Co.* 118 Mass. 546; *Railroad Co.* v. *Henry*, 79 Ill. 290; *Snyder* v. *Railroad Co.* 35 Wis. 60; *Tate* v. *R. R. Co.* 64 Mo. 149.

In applying the view we have taken of the law of this case upon a new trial, the other questions suggested at the argument will perhaps be avoided, and therefore need not be considered at this time.

Judgment of the court below is reversed and a new trial ordered.