# EDWARD E. GRIMES AND ANOTHER v. MINNEAPOLIS, ST. PAUL, ROCHESTER & DUBUQUE ELECTRIC TRACTION COMPANY.[1]

### July 7, 1916.

### Nos. 19,769—(177).

**Transitory action.**

1. An action to recover damages for breach of a contract to establish a railway station upon plaintiff's land is not within the statute which requires actions for injuries to real estate to be brought in the county in which the real estate is situated.

**Deed — grantor's testimony of addition since delivery competent evidence.**

2. If the grantee in a deed offers it in evidence for the purpose of asserting an executory provision therein against the grantor, it is competent for the grantor to testify that such provision was not in the deed when delivered to the grantee.

**Harmless error.**

3. Receiving in evidence a memorandum which adds nothing to the testimony, previously given, of the witness who made it, if error, is error without prejudice.

**Contract valid — measure of damages for breach.**

4. A contract made by a railway company to locate a station on a designated tract of land is valid, unless it be shown that the interests of the public are prejudiced thereby; and the measure of damages for breach of such contract is the difference in the value of the land with the station and without it at the time of the breach.

Action in the district court for Rice county to recover $3,000 for breach of contract. The defendant in its answer specifically denied that defendant agreed to build or maintain a station upon plaintiff's land for the receipt and discharge of freight and passengers. The case was tried before Childress, J., who when plaintiff rested denied defendant's motion to dismiss the action, and a jury which returned a verdict for $1,200.

1Reported in 158 N. W. 719.

Note.—As to validity of contract of railroad to establish and maintain station, see note in 15 L.R.A.(N.S.) 594.

Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the order denying its motion for a new trial, defendant appealed. Affirmed.

*M. H. Boutelle* and *R. T. Boardman,* for appellant.

*George S. Grimes,* for respondent.

TAYLOR, C.

Plaintiffs alleged that they were the owners of a farm of 120 acres; that they conveyed to defendant a right of way across the same for defendant's electric railroad track; that as the consideration for such conveyance defendant agreed to construct and establish a station upon plaintiffs' land for the receipt and discharge of freight and passengers as soon as the road was in operation; that defendant constructed its railway across the land and began to operate it on December 1, 1910, but has ever since failed and refused to establish such station; that if such station had been established plaintiffs' land would have been available for suburban residence property; that without such station it is available only for farming purposes, and that plaintiffs had been damaged in the sum of $3,000 by defendant's breach of the contract. Defendant admitted that plaintiffs owned the farm and had conveyed the right of way to defendant, also that defendant constructed its track across the farm and had begun operating its railway thereover at the time alleged, but denied making any agreement to establish a station on plaintiffs' land. After a verdict for plaintiff and the denial of a motion for a new trial, defendant appealed.

1. Defendant's contention that the district court of Rice county did not have jurisdiction of the action, for the reason that the land is located in Dakota county, is not well taken, as plaintiffs sued to recover damages for a breach of contract and not for a trespass upon or injury to the real estate.

2. While plaintiff Edward was testifying to the oral agreement made with defendant, defendant, for the purpose of laying a foundation for an objection to such testimony, produced the deed for the right of way, and asked him whether the signatures thereto were those of himself and his wife. He admitted the signatures, and was then permitted to testify over the objection of defendant that the words "a loading platform to be

erected and cattle pass to be maintained," appearing in the deed, were not therein at the time it was executed and delivered to defendant. Defendant's contention that the admission of this testimony was error cannot be sustained. If the deed had been altered while in the possession of defendant by inserting that provision, plaintiffs were entitled to show that fact, and thereby put themselves in position to invoke the rule that executory provisions in an altered instrument cannot be asserted by the spoliator against the other party. Robbins v. Hobart, supra, page 49, 157 N. W. 908. This rule, explained more at length in the case cited, also disposes of defendant's contention that the provisions quoted precluded plaintiffs from offering oral testimony, tending to prove a different contract. Having testified to the effect that this provision had been inserted in the deed after delivery, and there being no evidence that they had consented thereto, plaintiffs were not precluded thereby from offering any competent evidence tending to prove the actual agreement, and the court committed no error in receiving the evidence tendered.

3. The conversation in which the contract was made took place at the farm, and defendant's superintendent of right of way, its local right-of-way agent, and its chief engineer were present. Plaintiffs called the chief engineer as a witness, who testified to the effect that, after some talk back and forth, plaintiffs agreed to give the right of way if defendant would put in a station, a cattle pass and a crossing. He stated that he had made a note or memorandum of the station, cattle pass and crossing, and had filed it with the records in the office of the company. Plaintiffs had served notice upon defendant to produce this memorandum. It was not produced, and the engineer was permitted to state its contents. Defendant objected to the admission of this testimony, and urges here that the engineer had no authority to bind defendant by any memorandum made by him, and that the memorandum was inadmissible for that reason. We think the testimony was admissible, but, if not, its admission was clearly without prejudice, for the engineer had previously testified to everything which he stated he had noted in the memorandum.

4. The measure of damages adopted was the difference between the value of the farm with the station, and its value without the station, on the date defendant began operating its road across the farm. Defendant insists that this is not the proper measure of damages, and assigns as

reasons for its contention that, if a station were constructed upon plaintiffs' land, it would be the duty of the company to remove it to a different location whenever the convenience of the public rendered such change necessary, and that the expectation that the location of a station thereon would enhance the value of plaintiffs' property is too speculative to serve as a basis for damages.

This presents the serious question in the case. Although there is some diversity in the cases, it is established by the weight of authority that a contract made by a railway company to locate a station at a designated point is valid and binding, unless it be made to appear that some public interest is prejudiced thereby. But, whenever the needs of the public require a change in such location, the company is free to make such change, for it cannot bind itself by contract so as to interfere with the proper performance of its duties to the public. It is also established by the weight of authority that the rule adopted by the trial court is the correct measure of damages for breach of such contracts. Louisville, A. & P. V. Elec. Ry. Co. v. Whipps, 118 Ky. 121, 80 S. W. 507, 4 Ann. Cas. 996; Louisville, etc. R. Co. v. Neafus, 93 Ky. 53, 18 S. W. 1030; St. Louis & N. A. R. Co. v. Crandell, 75 Ark. 89, 86 S. W. 855, 112 Am. St. 42; Watterson v. Allegheny Valley R. Co. 74 Pa. St. 208; Louisville, N. A. & C. Ry. Co. v. Sumner, 106 Ind. 55, 5 N. E. 404, 55 Am. Rep. 719; Blagen v. Thompson, 23 Ore. 239, 31 Pac. 647, 18 L.R.A. 315; Belt v. Washington Water Power Co. 24 Wash. 387, 64 Pac. 525; Lyman v. Suburban R. Co. 190 Ill. 320, 60 N. E. 515, 52 L.R.A. 645; Texas & St. L. R. Co. v. Robards, 60 Tex. 545, 48 Am. Rep. 268; Mobile & M. Ry. Co. v. Gilmer, 85 Ala. 422, 5 South. 138; Atlanta & W. P. R. Co. v. Camp, 130 Ga. 1, 60 S. E. 177, 15 L.R.A.(N.S.) 594, 124 Am. St. 151, 14 Ann. Cas. 439.

The case of Eckington & S. H. Ry. Co. v. McDevitt, 191 U. S. 103, 24 Sup. Ct. 36, 48 L. ed. 112, cited by defendant as supporting its contention, involved an agreement to extend a street railway across McDevitt's land and thereafter to operate street cars thereover, in consideration of the grant of the right of way and the payment of $500 for which a promissory note was given. The line was constructed and operated for some years, but proving unprofitable was abandoned, the track taken up, the right of way restored to McDevitt, and she was discharged from liability

upon the note. The trial court ruled that she was entitled to recover "the difference between the value of her land with the cars running and with the expectation that they would continue always to run, and the value without the operation of the cars and with no expectation that they would run in the future." The court said: "Whether prevented gains or prospective profits are or are not too uncertain and contingent to be regarded as probable and contemplated consequences is always a question of difficulty, and as in such cases juries are permitted to exercise a wide discretion in the allowance of damages, great care is required in advising them as to the elements proper to be considered in making up their verdicts. * * * Here the evidence tended to show that a financial depression prevailed at the time of the breach, and that all real estate in the particular locality was unsaleable. Gains, then, were practically impossible, while, on the other hand, there was evidence that some years after the breach the depression passed away and real estate rose in value. * * * We think she could not recover for deprivation of the speculative gains of a remote future. What might have been made by selling the land at a value enhanced by the operation of the tracks in perpetuity was purely problematical and not naturally in contemplation. * * * It did not follow that the company, because it possessed the power to construct and operate this extension, could contract to operate it forever in so absolute a sense that damages could be awarded for the breach of such a contract, predicated on the expectation of its perpetual operation. * * * We are of opinion that the instruction as given was erroneous, and as it was definite and peremptory in its terms, and as it cannot be said that the jury were not influenced, and perhaps controlled, by it, we hold the error fatal to the judgment." The court reversed the judgment and directed a new trial.

As defendant seems to rely largely upon this case, we have quoted from it sufficiently to show that the error there held fatal consisted in directing the jury to award damages on the theory that the company had obligated itself to operate the line *forever*. This improper element was not included in the rule given the jury in the case at bar. In the absence of a showing that the public interests would be prejudiced thereby, the company was at liberty to contract to erect and maintain the station; but the rights conferred by the contract are subordinate to the rights of the

public, and are obligatory only so long as they do not interfere with the proper performance of the duties which the company owes to the public. The company would have the right to remove the station whenever it could show that public convenience required it to do so, and this fact might have a bearing upon the extent to which the erection of the station would enhance the value of the property. The trial court did not discuss this matter at all, and was not requested to do so. It merely directed the jury to measure the damages by the difference in value of the farm with the station and without it at the time of breach of the contract, and made no reference whatever to the length of time that the station, if erected, would be expected to be maintained. If defendant desired a specific instruction upon this point, we think it should have called the matter to the attention of the court. The other questions do not require special mention.

Order affirmed.